# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN IMMIGRATION COUNCIL,<br>1331 G Street, NW, Suite 200<br>Washington, DC 20005 | ) ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) ) | |
| U.S. IMMIGRATION & CUSTOMS<br>ENFORCEMENT<br>500 12th St SW<br>Washington, DC 20536 | ) ) ) ) ) | Case No.  18-cv-1531 |
| U.S. CUSTOMS & BORDER PROTECTION<br>1300 Pennsylvania Ave NW<br>Washington, DC 20229-1181 | ) ) ) ) | |
| U.S. DEPARTMENT OF HOMELAND<br>SECURITY<br>245 Murry Lane SW<br>Washington, DC 20528 | ) ) ) ) ) | |
| *Defendants.* | ) ) ) | |

## COMPLAINT

1.  Plaintiff the American Immigration Council ("Council") brings this action against

the U.S. Department of Homeland Security ("DHS"), U.S. Immigration & Customs Enforcement

("ICE"), and U.S. Customs & Border Protection ("CBP") (collectively, "Defendants") under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the disclosure of records

regarding the separation of families who arrive at the U.S.-Mexico border in response to the

FOIA requests made by the Council, National Immigrant Justice Center, Women's Refugee

Commission, Kids in Need of Defense, and the Florence Immigrant and Refugee Rights Project

on April 3, 2018.  The statutory deadline for a response has expired, and Defendants have failed to make a determination on the requests as required by law, in violation of FOIA.

2.     There is an urgent need for information regarding Defendants' current policies and practices regarding the treatment of noncitizens—many of them seeking asylum—who arrive as family units at the U.S.-Mexico border and, in many cases, have been prosecuted and separated.  This extraordinary policy impacting families who arrive at the U.S. border has been widely implemented.  Defendants have been the primary decision-makers in the implementation of this policy and the initial separation of families.  As such, records and data explaining their policies and practices are of vital importance to the public's understanding of the implementation of family separation.  Though President Trump issued an Executive Order on June 20, 2018 purporting to allow families to be detained together during criminal and immigration proceedings, the manner and timeframe in which that Order will be implemented remain unknown.  In addition, on June 26, 2018, the United States District Court for the Southern District of California issued orders certifying a class of separated parents and children and imposing a preliminary injunction against Defendants and other United States government agencies regarding certain aspects of the Defendants' policies with respect to separation and reunification of children who have already been separated from their parents and detained. Because the manner, circumstances and policies under which they will be identified and returned to their parents remain unclear, these issues continue to be of great importance and public interest.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

4.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C) because the Council's principal place of business is in the District of Columbia.

5.     The Council and co-requesters filed FOIA requests with the Defendants on April 3, 2018.  To date, Defendants have only acknowledged receipt of the requests and have not made determinations with respect to the requests.  Because Defendants have failed to respond within the statutory timeframe, the Council has exhausted its administrative remedies in connection with the requests as a matter of law.  5 U.S.C. § 552(a)(6)(C)(i).

## PARTIES

6.     The Council is a tax-exempt, not-for-profit educational and charitable organization under Section 501(c)(3) of the Internal Revenue Code.  Its principal place of business is at 1331 G Street, NW, Suite 200, Washington, D.C. 20005.  The Council was established to increase public understanding of immigration law and policy, advocate for the fair and just administration of our immigration laws, protect the legal rights of noncitizens and citizens, and educate the public about the enduring contributions of America's immigrants.  Through research and analysis, the Council has become a leading resource for policymakers and opinion makers at the national, state, and local levels who seek to understand the power and potential of immigration and to develop policies that are based on facts rather than myths.  The Council seeks to hold the government accountable for unlawful conduct and restrictive interpretations of the law and for failing to ensure that the immigration laws are implemented and executed in a manner that comports with due process.

7.     Defendant DHS is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency within the meaning of 5 U.S.C. § 552(f)(1).

DHS is responsible for enforcing federal immigration laws.  On information and belief, DHS has possession, custody, and control of records that Plaintiff seeks in its FOIA request.

8.      ICE is a component agency of DHS.  It is within a department within the executive branch of the U.S. government headquartered in Washington, D.C., and it is an agency within the meaning of 5 U.S.C. § 552(f)(1).  ICE is responsible for enforcing federal laws governing border control, customs, trade, and immigration.  On information and belief, ICE has possession, custody, and control of records that Plaintiff seeks in its FOIA request.

9.      CBP is a component agency of DHS.  It is within a department within the executive branch of the U.S. government headquartered in Washington, D.C., and it is an agency within the meaning of 5 U.S.C. § 552(f)(1).  CBP is a law enforcement agency in charge of border management and control.  On information and belief, CBP has possession, custody, and control of records that Plaintiff seeks in its FOIA request.

## STATEMENT OF FACTS

10.      In 2017, news outlets reported that DHS was contemplating a new policy to intentionally and systematically separate families of noncitizens who arrive at the border to deter their migration to the United States.

11.      Since that time, DHS has provided many conflicting public statements about the existence or nonexistence of a family separation policy, though news outlets, congressional offices and organizations that provide legal assistance to noncitizens at the U.S.-Mexico border have reported that the practice is widespread.

12.      Senator Dianne Feinstein's office recently shared statistics indicating DHS has taken 2,342 children, including infants and toddlers, from their parents in a single five-week span from May 5 to June 9, 2018.

13.     DHS has represented in a separate action challenging family separation that there is no family separation policy and that such a policy would be "antithetical to [] child welfare values." *Ms. L. v. U.S. Immigration & Customs Enforcement*, 302 F.Supp.3d 1149, 1149 (S.D. Cal. 2018).  DHS Secretary Kirstjen Nielson recently stated in a tweet: "[w]e do not have a policy of separating families at the border.  Period."  She has stated that removing children from their parents necessarily happens when parents are prosecuted for admission-related crimes and their children cannot be detained with them in federal custody.  In contrast, other Administration officials, such as White House Chief of Staff John Kelly and Steve Wagner, the Principal Deputy Assistant Secretary and Acting Assistant Secretary at the United States Department of Health and Human Services' ("HHS") Administration for Children and Families, have indicated that a family separation policy is or was under consideration and may effectively deter families from coming to the United States.

14.     DHS policies have also been impacted by other executive agencies, such as the United States Department of Justice ("DOJ").  On April 6, 2018, Attorney General Jeff Sessions notified all United States Attorney's Offices along the southwest border of a new "zero-tolerance policy" for offenses under 8 U.S.C. § 1325(a), which prohibits both attempted illegal entry and illegal entry into the United States by a non-citizen.  This policy mandates the prosecution for illegal entry of everyone apprehended between ports of entry, including asylum seekers.

15.     On June 20, 2018, the family separation landscape changed again when the President issued an Executive Order stating that the Administration will continue to prosecute crimes such as "improper entry" under the 8 U.S.C. § 1325(a) under a "zero tolerance" policy but will institute a "temporary detention policy" so family members may remain together during criminal or immigration proceedings.  It is unclear how this new policy will interact with existing

agency policies related to family separation or will be possible without modifications to legal protections for detained children in the decades-old *Flores* settlement agreement.    Many news outlets and organizations that work with separated families report that families are not being reunited after the issuance of the Executive Order, and that parents have been deported without their children.

16.    On June 21, 2018, CBP issued a statement indicating family separation policies will continue.    Notwithstanding the Executive Order, it stated families may continue to be separated "due to humanitarian, health and safety, or criminal history in addition to illegally crossing the border."    CBP has not explained the specific criteria by which it will make these determinations.

17.    On June 23, 2018, DHS published on its website a "Fact Sheet" describing how CBP, ICE, and HHS will coordinate "family reunification."    On the evening of June 26, 2018, the court in *Ms. L v. U.S. Immigration & Customs Enforcement* issued twin orders certifying a class of separated parents and children and issuing a preliminary injunction against the Defendants and other United States government agencies regarding the treatment of parents and children separated at the border.    Order Granting In Part Plaintiffs' Motion for Class Certification, *Ms. L v. U.S. Immigration & Customs Enforcement*, No. 18-cv-428 DMS (S.D.CA, June 26, 2018), ECF No. 82; Order Granting Plaintiffs' Motion for Classwide Preliminary Injunction, *id.*, ECF No. 83.    In its orders, the Court pointed out that the Fact Sheet addresses only the reunification of children with their separated parents "for the purpose of removal"; it does not address reunification of these families during the pendency of criminal or immigration proceedings.    The insufficiency of the Fact Sheet and other factors informed the Court's decision to order Defendants to reunify adult class members with their minor children within 30 days

"[u]nless there is a determination that the parents is unfit or presents a danger to the child, or the parent affirmatively, knowingly, and voluntarily declines to be reunited with the child," to facilitate communication between class members and their children, and to cease detaining class members apart from their minor children.  Order Granting Plaintiffs' Motion for Classwide Preliminary Injunction, *id.*, ECF No. 83 at 22-23.

### *Defendants' Failure to Properly Respond to the FOIA Requests*

18.     On April 3, 2018, the Council and co-requesters submitted separate FOIA requests to DHS, CBP, and ICE.  Corresponding requests were sent to HHS, the DOJ and select component agencies.  The requests to DOJ and HHS are not the subject of this lawsuit.

19.     The FOIA requests to the Defendants sought records related to the processing and treatment of noncitizen families who arrive at the border, particularly the U.S.-Mexico border. The requests ask for policies, guidance and training related to the separation of adult family members from minor children, all complaints referencing family separation received by the agencies, and data capturing the number of children separated from their families and the number of adult family members who were referred for criminal prosecution.  Copies of the FOIA request to CBP, ICE, and DHS are attached hereto as Exhibits A, B, and C, respectively. Although the three requests are not identically worded, they are substantively similar.

16.     Upon a request for records, FOIA requires each agency (1) to conduct a search reasonably calculated to uncover all responsive documents; and (2) to promptly make available such responsive records.  5 U.S.C. § 552(a)(3)(A), (C).

17.     FOIA also requires the agency to make a determination of whether it will comply with the request within 20 working days.  5 U.S.C. § 552(a)(6)(A)(i); 6 C.F.R. § 5.6(c).  If

unusual circumstances apply, then an agency may request, by written notice, an additional 10

working days to issue its determination.  5 U.S.C. § 552(a)(6)(B)(i).

18.     If an agency fails to comply with the time periods set forth in the statute, then the

requester is "deemed to have exhausted his administrative remedies," and may seek judicial

review.  5 U.S.C. § 552(a)(6)(C)(i).  The agency also will not be permitted to assess search fees

if it fails to comply with the applicable time limits.  5 U.S.C. § 552(a)(4)(A)(viii)(I); 6 C.F.R. §

5.11(d)(2).

19.     On April 5, 2018, the Privacy Office of DHS, which handles FOIA requests

directed at DHS, sent the Council letters acknowledging that it had received the request on April

4, 2018, and requested a 10-day extension as permitted under 6 C.F.R. § 5.5(c).  Copies of the

DHS acknowledgment letters are attached hereto as Exhibit D.

20.     On April 17, 2018, ICE acknowledged that it had received the request on April 3,

2018 and requested a 10-day extension as permitted under 5 U.S.C § 552(a)(6)(B).  A copy of

the ICE acknowledgment letter is attached hereto as Exhibit E.

21.     Even with the requested 10-day extension, the deadline for making a

determination regarding responsive documents expired after 30 working days, on May 15, 2018

for ICE and on May 16, 2018 for DHS.

22.     On May 8, 2018, the Council sent follow-up requests to each Defendant.  By this

date, the Council had not received an acknowledgment letter from CBP and had not received any

determination on the FOIA requests from ICE, CBP or ICE.  Copies of the follow-up letters to

DHS, ICE and CBP are attached hereto as Exhibits F, E.1, and G, respectively.

23.     Following the prompt, on May 30, 2018, CBP sent an acknowledgment letter,

which neither informed the Council of its intent to respond within the 20-day statutory time

period nor that it was requesting a 10-day extension.  A copy of the CBP acknowledgment letter is attached hereto as Exhibit H.

24.    60 working days after receiving the FOIA requests, the three Defendants have failed to make a determination regarding the FOIA requests, notwithstanding their statutory obligation under FOIA to respond.  The deadline—even with the extension—passed 29-30 days ago.

25.    As of the date of this complaint, Defendants have failed to notify the Council and its co-requesters (a) of any determination regarding the requests, including the scope of any responsive records the government intends to produce or withhold and the reasons for any withholdings; (b) whether they will grant the Council and co-requesters' fee waiver request; or (c) whether they will produce the requested records or demonstrate that the requested records are lawfully exempt from production.

### COUNT I
### Violation of FOIA, 5 U.S.C. § 552
### for Improper Withholding of Responsive Records

26.    Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

27.    Plaintiff properly requested records within the possession, custody, and control of all three Defendants.

28.    Each of the Defendants is an agency subject to FOIA and must therefore make reasonable efforts to search for requested records and to promptly make the requested records available. 5 U.S.C. § 552(a)(3)(A), (C).

29.     On information and belief, each of the Defendants has failed to promptly review agency records for the purpose of locating those records which are responsive to the FOIA requests.

30.     Each of the Defendants has failed to comply with FOIA's statutory deadline for making a determination as to whether it will comply with Plaintiff's requests, in violation of 5 U.S.C. § 552(a)(6)(A)(i); 6 C.F.R. § 5.6(c) and 5 U.S.C § 552(a)(6)(B).

31.     Furthermore, each of the Defendants is improperly withholding agency records requested by Plaintiff by failing to produce records responsive to its FOIA requests.

32.     Plaintiff is therefore entitled to injunctive and declaratory relief requiring each of the Defendants to promptly make reasonable efforts to search for records responsive to the FOIA requests, to make a prompt determination as to compliance with the FOIA requests, and to promptly produce all non-exempt records responsive to those FOIA requests and provide indexes of any responsive records withheld under claim of exemption.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

(1) Declare that Defendants' failure to comply with the statutory deadline to make a determination in response to Plaintiff's FOIA requests violated FOIA;

(2) Declare that Defendants' refusal to conduct a reasonable search for records responsive to Plaintiff's FOIA requests violated FOIA;

(3) Declare that Defendants' refusal to disclose all records responsive to Plaintiff's FOIA requests violated FOIA;

(4) Order Defendants and any of Defendants' departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf

of Defendants to conduct a reasonable search for records responsive to Plaintiff's

FOIA requests;

(5) Order each Defendant to produce, by such a date as the Court deems appropriate, any

and all non-exempt records responsive to Plaintiff's FOIA requests and indexes of

any responsive records withheld under claim of exemption;

(6) Order each Defendant to waive the fees associated with Plaintiff's FOIA requests;

(7) Enjoin the Defendants from continuing to withhold any and all non-exempt records

responsive to Plaintiff's FOIA requests;

(8) Award Plaintiff the costs of this proceeding, including reasonable attorneys' fees and

other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C.

§ 552(a)(4)(E);

(9) Grant Plaintiff such other relief as the Court deems just and proper.


Dated: June 27, 2018                          Respectfully submitted,

                                              /s/ Ni Qian_____
                                              Ni Qian (Bar No. D00465)
                                              Rachel Weiner Cohen (*pro hac vice* motion
                                              to follow)
                                              WILMER CUTLER PICKERING HALE AND
                                              DORR LLP
                                              1875 Pennsylvania Avenue NW
                                              Washington, D.C. 20006
                                              (202) 663-6000 (phone)
                                              (202) 663-6363 (fax)
                                              ni.qian@wilmerhale.com
                                              rachel.cohen@wilmerhale.com

                                              John Walsh (*pro hac vice* motion to follow)
                                              WILMER CUTLER PICKERING HALE AND
                                              DORR LLP
                                              1225 Seventeenth St.

Suite 2600
Denver, CO 80202
(720) 274-3154 (phone)
(720) 274-3133 (fax)
john.walsh@wilmerhale.com

Emily Creighton (Bar No. 1009922)
AMERICAN IMMIGRATION COUNCIL
1331 G Street, N.W., Suite 200
Washington, DC 20005
(202) 507-7500 (phone)
(202) 742-5619 (fax)
ecreighton@immcouncil.org

*Counsel for Plaintiff*