UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN IMMIGRATION COUNCIL,

        Plaintiff,

    v.

U.S. IMMIGRATION & CUSTOMS
ENFORCEMENT, et al.,

        Defendants.

Civil Action No. 18-1531 (RCL)

**DEFENDANTS' OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR ATTORNEY'S FEES</u>**

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Introduction ................................................................................................................... 1

Background ..................................................................................................................... 2

Legal Standards ............................................................................................................. 2

Argument ........................................................................................................................ 3

    I.     Plaintiff Fails to Demonstrate Entitlement to Attorney's Fees ............................. 4

    II.    The Court Should Deny Plaintiff's Fee Demand, on in the Alternative, Award A Substantially Reduced Award. ............................................................................... 10

        A.    The Court Should Decline to Grant the Fee Award. .................................. 10

        B.    In the alternative, the Court Should Decline to Grant Fee Award for Certain Entries and/or Substantially Reduce the Fee Award for Certain Entries. ..................................................................................................... 12

    III.   The Court Should Deny or Reduce the Fees-on-Fees Award Because It Is Excessive ................................................................................................................ 24

Conclusion .................................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Action on Smoking & Health v. Civil Aeronautics Bd.*,
   724 F.2d 211 (D.C. Cir. 1984) ................................................................. 17

*Aerotronics, Inc. v. United States*,
   943 F.2d 1344 (D.C. Cir. 1991) ............................................................ 27

*Am. Ctr. For L. & Just. v. Dep't of Homeland Sec.*,
   573 F. Supp. 3d 78 (D.D.C. 2021) ......................................................... 3

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
   82 F. Supp. 3d 396 (D.D.C. 2015) ....................................... 15, 20, 21, 23

*Am. Petrol. Inst. v. EPA*,
   72 F.3d 907 (D.C. Cir. 1996) ............................................................... 27

*Am. Wrecking Corp. v. Sec'y of Labor*,
   364 F.3d 321 (D.C. Cir. 2004) ............................................................. 15

*Ashton v. Pierce*,
   580 F. Supp. 440 (D.D.C. 1984) .......................................................... 20

*Assassination Archives & Rsch. Ctr., Inc. v. CIA*,
   Civ. A. No. 17-0160 (TNM), 2019 WL 1491982 (D.D.C. Apr. 4, 2019) ............... 5

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
   857 F.3d 939 (D.C. Cir. 2017) ................................................. 11, 12, 26

*Bloomgarden v. Dep't of Just.*,
   253 F. Supp. 3d 166 (D.D.C. 2017) ....................................... 18, 19, 20, 21, 22, 23

*Brennan Ctr. for Just. v. Dep't of Homeland Sec.*,
   Civ. A. No. 16-1609 (ABJ), 2019 WL 280954 (D.D.C. Jan. 22, 2019) ............... 24

*Chesapeake Bay Found. v. Dep't of Agric.*,
   11 F.3d 211 (D.C. Cir. 1993) ............................................................... 6

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   272 F. Supp. 3d 49 (D.D.C. 2017) ........................................................ 7

*Conservation Force v. Jewell*,
   160 F. Supp. 3d 194 (D.D.C. 2016) ...................................................... 8

*Copeland v. Marshall*,
   641 F.2d 880 (D.C. Cir. 1980) ............................................................. 27

*Ctr. For Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*,
  628 F. Supp. 3d 266 (D.D.C. 2022) ........................................................................... 3

*Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*,
  169 F.3d 755 (D.C. Cir. 1999) ................................................................................. 21

*Davis v. Dep't of Just.*,
  610 F.3d 750 (D.C. Cir. 2010) ................................................................................... 3

*Davy v. CIA*,
  550 F.3d 1155 (D.C. Cir. 2008) ......................................................................... 5, 6, 7

*Edelman v. SEC*,
  356 F. Supp. 3d 97 (D.D.C. 2019) ............................................................................. 9

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
  197 F. Supp. 3d 290 (D.D.C. 2016) ......................................................................... 12

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
  811 F. Supp. 2d 216 (D.D.C. 2011) ..................................................... 13, 19-20, 23

*Elec. Privacy Info. Ctr. v. FBI*,
  72 F. Supp. 3d 338 (D.D.C. 2014) ...................................................................... 23-24

*Env't Def. Fund v. Reilly*,
  1 F.3d 1254 (D.C. Cir. 1993) ............................................................................. 11, 18

*Env't Integrity Proj. v. EPA*,
  316 F. Supp. 3d 320(D.D.C. 2018) ........................................................................ 7, 9

*Fabi Constr. Co. v. Sec'y of Lab.*,
  541 F.3d 407 (D.C. Cir. 2008) ................................................................................. 17

*Fox v. Vice*,
  563 U.S. 826 (2011) ........................................................................................... 12, 13

*Friends of the River v. Army Corps of Eng'rs*,
  Civ. A. No. 16-2327 (ZMF), 2025 WL 2267528 (D.D.C. August 8, 2025) .............. 10, 11, 14

*Frye v. EPA*,
  Civ. A. No. 90-3041, 1992 WL 237370 (D.D.C. Aug. 31, 1992) ............................. 9

*Gov't Accountability Proj. v. Dep't of Homeland Sec.*,
  Civ. A. No. 17-2518 (CRC), 2020 WL 4931932 (D.D.C. June 2, 2020) ................. 5

*Grand Canyon Tr. v. Bernhardt*,
  947 F.3d 94 (D.C. Cir. 2020) ..................................................................................... 9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1982) ....................................................... 1, 12, 15, 17, 19, 25

*In re Meese,*
   907 F.2d 1192 (D.C. Cir. 199) ..................................................................... 14, 17

*In re North*
   59 F.3d 184 (D.C. Cir. 1995) ........................................................................... 26

*In re Olson,*
   884 F.2d 1415 (D.C. Cir. 1989) ....................................................................... 22

*INS v. Jean,*
   496 U.S. 154 (1990) ................................................................................... 24, 25

*Jud. Watch, Inc. v. Dep't of Just.,*
   878 F. Supp. 2d 225 (D.D.C. 2012) ................................................................... 3

*Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.,*
   Civ. A. No. 20-1128 (TNM), 2023 WL 3478479 (D.D.C. May 16, 2023)
   .................................................................... 14, 15, 16, 17, 24, 25, 26

*Louise Trauma Ctr. LLC v. Dep't of Just.,*
   Civ. A. No. 20-3517 (RC), 2024 WL 4227635 (D.D.C. Sept. 18, 2024) .............. 25

*McKinley v. Fed. Hous. Fin. Agency,*
   739 F.3d 707 (D.C. Cir. 2014) ........................................................................... 3

*Michigan v. EPA,*
   254 F.3d 1087 (D.C. Cir. 2001) ................................................................... 14, 15

*Morley v. CIA,*
   719 F.3d 689 (D.C. Cir. 2013) ........................................................................... 4

*Morley v. CIA,*
   894 F.3d 389 (D.C. Cir. 2018) ......................................................... 2, 4, 8, 12

*Norman v. Housing Auth. of City of Montgomery,*
   836 F.2d 1292 (11th Cir. 1988) ....................................................................... 20

*Nw. Coal. for Alternatives to Pesticides v. Browner,*
   965 F. Supp. 59 (D.D.C. 1997) ................................................................... 13, 14

*Peter S. Herrick's Customs & Int'l Trade Newsl. v. Customs & Border Prot.,*
   Civ. A. No. 04-0377 (JDB), 2006 WL 3060012 (D.D.C. Oct. 26, 2006) .............. 9

*Pigford v. Vilsack,*
   89 F. Supp. 3d 25 (D.D.C. 2015) ..................................................................... 14

*United Am. Fin., Inc. v. Potter,*
   770 F. Supp. 2d 252 (D.D.C. 2011) ................................................................... 9

*Reyes v. Nat'l Archives & Recs. Admin.,*
   356 F. Supp. 3d 155 (D.D.C. 2018) ................................................................. 20

*Role Models Am., Inc. v. Brownlee*,
    353 F.3d 962 (D.C. Cir. 2004) ........................................................................ 14, 15

*Short v. Army Corps of Eng'rs*,
    613 F. Supp. 2d 103 (D.D.C. 2009) ...................................................................... 8

*Sierra Club v. Jackson*,
    926 F. Supp. 2d 341 (D.D.C. 2013) .................................................................... 25

*Simon v. United States*,
    587 F. Supp. 1029 (D.D.C. 1984) ........................................................................ 8

*Smith v. D.C.*,
    466 F. Supp. 2d 151 (D.D.C. 2006) ............................................................... 21-22

*Trichilo v. Sec'y of Health & Hum. Servs.*,
    823 F.2d 702 (2d Cir. 1987) .............................................................................. 24

*Urban Air Initiative, Inc. v. EPA*,
    442 F. Supp. 3d 301 (D.D.C. 2020) ........................................................ 23, 24, 26

*WP Co. LLC v. Dep't of Homeland Sec.*,
    Civ. A. No. 20-1487 (TNM), 2023 WL 1778196 (D.D.C. Feb. 6, 2023) ............... 5

**Statutes, Rules, Regulations, and Other Authorities**

5 U.S.C. § 552 ........................................................................................................ 2

Defendants U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP") and the U.S. Department of Homeland Security ("DHS") (collectively, "Defendants"), by and through the undersigned counsel, respectfully submit this opposition to the motion for attorney's fees ("Pl.'s Mot.," ECF No. 113) filed by Plaintiff American Immigration Council ("Plaintiff") in this Freedom of Information Act ("FOIA") case.

## INTRODUCTION

This Court handles a substantial portion of the nation's FOIA litigation but, apart from the most convoluted FOIA suits, it is relatively uncommon for fees matters to be litigated, and the Court accordingly does not always encounter a thorough airing of the facts underlying fee issues in comparatively straightforward FOIA suits. The majority of FOIA fees claims are settled, largely because parties reasonably conclude that it is not worth the resources or even a small litigation risk to contest fee issues. Plaintiff, however, seeks close to half of million dollars in fees for this FOIA proceeding which involved delays due to Plaintiff's overly broad FOIA requests and failure to reasonably describe the records sought at the outset, no substantive briefing, periodic status reports, and rolling productions.

Defendants are regretful that the Court must be burdened with "one of the least socially productive types of litigation imaginable"—namely, satellite attorney's fees litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 442 (1982) (Brennan, J., concurring in part and dissenting in part); *accord id.* at 437 (majority op.) ("a 'request for attorney's fees should not result in a second major litigation'" (cleaned up)). But rather than agree to a patently unreasonable fee demand and take the relatively easy path of a quick financial settlement, Defendants have a duty to taxpayers and the public at large to resist a profoundly flawed fee demand. In circumstances like here, Defendants must take a stand so that individual plaintiffs and their counsel do not attempt to obtain

a "windfall" through public funds that ought to benefit the American people at large, not just the most aggressive FOIA requesters.  The Court should accordingly deny Plaintiff's motion.

## BACKGROUND

At issue in this ligation are three FOIA requests, one submitted to ICE, one submitted to CBP, and one submitted to DHS. Plaintiff submitted lengthy multi-part requests seeking records about the separation of adults and children encountered at the U.S.-Mexico Border. *See* Pl.'s Compl. ECF No. 1) ¶ 19 and referenced exhibits; *see also* Howard Decl. ¶ 5 (describing the FOIA request to consist of thirty-three distinct sub-parts); Pavlik-Keenan Decl. ¶ 5 (describing the FOIA as "three pages long and contained 20 different parts and subparts").  Plaintiff's FOIA requests were unreasonably described, which resulted in a voluminous number of pages that required processing.  This matter involved rolling productions for approximately six years until production was completed.  After production was completed, Plaintiff did not challenge Defendants' search and any of the withholdings and agreed briefing on the merits was not warranted (*see* Jt. Status Report (ECF No. 107)) but demands an astronomical amount of money, namely, $446,554.70 to be exact.  Plaintiff filed its motion for attorney's fees, and the Defendants now oppose Plaintiff's motion.

## LEGAL STANDARDS

The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i); *see Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018) ("the FOIA attorney's fees statute provides that the district court 'may' award fees to a prevailing plaintiff—and not 'must' or 'shall' award fees").  As such, a court has "very broad discretion" about "whether to award or deny fees."  *Morley*, 894 F.3d at 391, 396.

"To obtain attorneys' fees under FOIA, a plaintiff must satisfy two requirements. First, [plaintiff] must be eligible for fees…Second, an eligible plaintiff must [also] demonstrate that [it] is entitled to fees." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). Even then, the amount of fees sought must be "reasonable." *Davis v. Dep't of Just.*, 610 F.3d 750, 752 (D.C. Cir. 2010) (quoting 5 U.S.C. § 552(a)(4)(E)(i)). Once a plaintiff establishes eligibility and entitlement to attorney's fees, the plaintiff must demonstrate that the requested fees and costs are reasonable. *See Jud. Watch, Inc. v. Dep't of Just.*, 878 F. Supp. 2d 225, 238 (D.D.C. 2012).

## ARGUMENT

FOIA creates "mismatched incentives" for nonprofit requesters to sue the government. *Am. Ctr. For L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021). So long as "the agency [is] ultimately footing the bill," nonprofit requesters "have everything to gain" in bringing suits, and little reason to forbear. *Id.* "FOIA's requester-friendly fee shifting provisions encourage requesters (particularly nonprofit ones)" to bring more and more suits, "with taxpayers picking up the tab." *Ctr. For Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 271 (D.D.C. 2022). Unsurprisingly, nonprofit requesters frequently treat FOIA as a "blank check," *id.* at 275, filing numerous requests, then numerous lawsuits, then demanding exorbitant fees for their trouble. This case reflects such trends. Plaintiff, a nonprofit entity, has submitted overly broad and unreasonably described FOIA requests and over-staffed and over-litigated this case, and now seeks to take $446,554.70 from the public fisc as an unreasonable reward for its efforts. The Court should not encourage or reward such antics with any award, let a long high one such as Plaintiff.

Plaintiff must establish both eligibility and entitlement for attorney's fees. Defendants acknowledge that the Court issued a production schedule and orders requiring the agencies complete production by a date certain. Defendants, however, note that the Court order requiring

a production schedule was based on an agreement that the parties had already reached in the proposed scheduling order.  *See* Jt Status Report and Proposed Scheduling Order (ECF No. 45); *see also* Order (ECF No. 46) (adopting the parties' proposed scheduling order).  Again, this is an indication that Defendants were engaging in good faith with Plaintiff and already agreed to process a certain number of pages before the Court's intervention.  As the joint status reports indicate, the Defendants were in constant communication with the Plaintiff relating to their overly broad requests as well as all the progress and actions being undertaken by the agencies, all while keeping the Court informed.  *See generally* Jt Status Report and Proposed Scheduling Order (ECF No. 45).  Defendants also acknowledge that while the Court ordered that all production be completed by July 31, 2025 – much of the delay was beyond control of Defendants, who were waiting for other agencies to complete their review of documents that had their equities (consultations).  *See* Jt. Status Report (ECF No. 98) (outlining the need for consultations); *see* Order (ECF No. 100).

Further, as discussed below, Defendants have not changed their position throughout this litigation and Plaintiff is not entitled to fees.  Even if the Court finds that Plaintiff is eligible for and entitled to attorney's fees, the fee demand is patently unreasonable on its face and should be denied in its entirety or at the very least substantially reduced.

## I.  Plaintiff Fails to Demonstrate Entitlement to Attorney's Fees

The D.C. Circuit has articulated a "four-factor standard . . . for considering a substantially prevailing party's entitlement to attorney's fees in FOIA cases."  *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013).  "Those four factors are: (1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct."  *Id.*  "[W]hen the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors and whether to award attorney's fees."  *Morley*, 894 F.3d at 391.

Defendants do not dispute the first factor nor do they dispute the second and third factors which courts generally "consider . . . in tandem," *WP Co. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1487 (TNM), 2023 WL 1778196, at *3 (D.D.C. Feb. 6, 2023), tend toward Plaintiff's favor. But because Plaintiff's argument as to the third factor essentially parrots its argument as to the public benefit factor, *see* Pl.'s Mot. (ECF No. 113) at 15–16, this factor favors it "only marginally." *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, Civ. A. No. 17-0160 (TNM), 2019 WL 1491982, at *4 (D.D.C. Apr. 4, 2019), *aff'd*, No. 19-5165, 2019 WL 4565818 (D.C. Cir. Sept. 6, 2019); *see also McKinley*, 739 F.3d at 712 (second and third factors did "little to advance" and did not "strongly support" but did not "counsel against" entitlement to fees). Contrary to Plaintiff's assertion, however, the fourth factor, and the overall weight of the factors, weighs firmly against any entitlement to fees, as discussed below.

In terms of factor four, "the purpose of the fourth factor of the attorney's fees inquiry is to determine not whether the agency acted correctly, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the relevant material." *Morley*, 894 F.3d at 394 (internal quotation marks omitted). Relevant to this inquiry is "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy v. CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (internal quotation marks omitted).

As a threshold matter, however, if a plaintiff "does not contest" an agency's determinations, it has agreed "there was no improper withholding, [and] the Court need not decide whether the agency had a 'colorable or reasonable basis.'" *Gov't Accountability Proj. v. Dep't of Homeland Sec.*, Civ. A. No. 17-2518 (CRC), 2020 WL 4931932, at *2 (D.D.C. June 2, 2020) (quoting *Davy*, 550 F.3d at 1163). Likewise, if a plaintiff challenges the withholdings and the court finds that "the Government's position is correct as a matter of law, that [is] dispositive" and

the entitlement analysis automatically resolves in the government's favor. *Chesapeake Bay Found. v. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993). "[T]he court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy*, 550 F.3d at 1159. Here, Plaintiff was satisfied with the Defendants' voluminous productions, or as Plaintiff describes "tens of thousands of responsive [] documents" (*see* ECF No. 113-1 at 16), and did not contest any of the withholdings, only demanded fees. Thus, this factor weighs in favor of the Defendants.

Nevertheless, Plaintiff argues that this factor weighs in its favor because "Defendants failed to abide by the deadlines for response stipulated by FOIA" and "demonstrated no reasonable basis for their original non-compliance, except generic references to 'the increasing number of FOIA requests' or to 'a significant backlog of FOIA requests.'" Pl.'s Mot. (ECF No. 113-1) at 16. Plaintiff is wrong for the additional reasons discussed below.

First, Defendants' conduct was more than reasonable in light of Plaintiff submitting overly broad and unreasonably described FOIA requests, which yielded a massive number of records and required the government to participate in numerous discussions with Plaintiff to narrow the scope and volume of the records. To each agency, Plaintiff submitted a lengthy multi-part request seeking records about the separation of adults and children encountered at the U.S.-Mexico Border. *See* Pl.'s Compl. (ECF No. 1) ¶ 19 and referenced exhibits; *see also* Howard Decl. ¶ 5 (describing the FOIA request to consist of thirty-three distinct sub-parts); Pavlik-Keenan Decl. ¶ 5 (describing the FOIA as "three pages long and contained 20 different parts and subparts"). The FOIA requests were unreasonably described. *See* Howard Decl. ¶ 6 (describing why Plaintiff's FOIA request was unreasonably broad and burdensome); *see also* Pavlik-Keenan Decl. ¶¶ 9, 17 (same). As DHS describes, "Plaintiff made no attempt to scope or focus their requests on any specific type of record

but cast the broadest net possible to capture basically any type of communication, regardless of the context, that related to the underlying subject matter.  The lack of such focus required [the agencies] to find every needle in a massive haystack." Pavlik-Keenan Decl. ¶ 9.  Also, prior to filing its complaint there is no indication that Plaintiff attempted to narrow its FOIA requests, even after DHS invited them to do so.  *See* Pavlik-Keenan Decl. ¶ 6; *see also* Pl.'s Ex. E.1, ICE's Follow-Up Email (ECF No.1-6) (advising that due to the scope of the request, it would take longer to locate, process, and review any records).  Despite Plaintiff failing to narrow the requests, DHS began initiating the search for potentially responsive records, *id.*, and throughout this litigation the Defendants made significant efforts to cooperatively work with Plaintiff and make the requests more manageable, reduce the volume of records that required processing, and decrease the length of time to process.  *See* Pavlik-Keenan Decl. ¶¶ 11–36 (discussing in great detail the efforts taken to process the FOIA request); *see also* Howard Decl. ¶¶ 8–19 (same); *see also* Pl.'s Ex. E.1, ICE's Follow-Up Email (ECF No.1-6); Jt. Status Report (ECF No. 49) at 2 (ICE hired an outside contractor and initiated the use of an Artificial Intelligence tool to assist in processing Plaintiff's production).

Also, in addition to above, to the extent the government could not respond to Plaintiff's FOIA requests sooner due "to the increasing number of FOIA requests or to a significant backlog of FOIA requests," that is more than a reasonable basis.  *Env't Integrity Proj. v. EPA*, 316 F. Supp. 3d 320, 328 (D.D.C. 2018) ("When [plaintiff] filed its FOIA request, [agency] had only three staff members responsible for reviewing and processing records potentially responsive to FOIA requests; the same three staffers were also dealing with over 100 backlogged FOIA requests from the previous year."); *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 272 F. Supp. 3d 49, 54 (D.D.C. 2017) (understaffing at agency's FOIA office undermined plaintiff's claim that

lawsuit caused the release of records); *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016) (agency "tasked only one individual with processing all FOIA requests"). While Plaintiff focuses on Defendants' failure to provide all documents by the deadlines within the timelines under the FOIA, courts have routinely declined to find an agency unreasonable where delays stemmed from delayed administrative processing, logistical hurdles, and resource constraints. *See Short v. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing"); *see also Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984) ("[W]hile an agency's failure to meet deadlines is not to be condoned, it does not warrant an award of fees in and of itself."); *cf. Morley*, 894 F.3d at 393 (although agency "failed to properly respond to the request within 20 days, as required by statute," that "is true of a vast number of FOIA requests," and "the statute does not suggest that an award of attorney's fees should be automatic in those situations"). Plaintiff offered no evidence that Defendants acted in bad faith, or with recalcitrance or obduracy.

To the contrary, collectively the Defendants engaged in extraordinary efforts to process the results of the searches suggested by Plaintiff. As reported to this Court on February 8, 2019, Plaintiff's searches generated a "staggering" number of potentially responsive pages. DHS reported that their search generated approximately 1,618,157 emails, and that each could contain numerous pages and/or attachments. *See* Jt. Status Report (ECF No. 35) at 2. CBP's search generated approximately 1,467,000 pages of potentially responsive records, and ICE's completed search generated over 3,300,000 million pages. *See id.* The volume of this "unmanageable number of pages" would have taken "well over a hundred years to process." *Id.*; *see also* Defs.' Status Report (ECF No. 38). In the case, ICE needed to hire a contractor and employ the use of an

Artificial Technology tool to assist in the processing of the records generated by search terms largely suggested by Plaintiff, *see* Jt. Status Report (ECF No. 49) at 2.  Similarly, as described in the CBP's and DHS's declaration, both agencies made significant efforts to process Plaintiff's request, *see* Pavlik-Keenan Decl. ¶¶ 11–36; Howard Decl. ¶¶ 8–19.  *See* Defs.' Extension Mot. (ECF No. 28) at 6 ("defendants have been engaged with plaintiff to try and ensure that their search efforts match what plaintiff is looking for under the FOIA, and have undertaken searches once the parties reached agreement.").

The facts make clear that at no point did the Defendants refuse to process or release records to the Plaintiff.  The Defendants' extraordinary efforts to process an "unmanageable number of pages" generated by searches directed by Plaintiff further undermines Plaintiff's entitlement to an award of fees.  *See* Defs.' Extension Mot. (ECF No. 28); Defs.' Notice (ECF No. 35); Defs.' Status Report (ECF No. 38); *see also Peter S. Herrick's Customs & Int'l Trade Newsl. v. Customs & Border Prot.*, Civ. A. No. 04-0377 (JDB), 2006 WL 3060012, at *10 (D.D.C. Oct. 26, 2006) ("[T]his is not a case in which the government stubbornly refused to accede to a valid claim."); *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) ("Neither agency suggested it would fail to comply with the request"); *Env't Integrity Proj.*, 316 F. Supp. 3d at 327 ("Nothing in [agency's] answer suggests that the agency refused to search for or release responsive documents to [plaintiff] prior to [plaintiff's] filing of the complaint");  *Edelman v. SEC*, 356 F. Supp. 3d 97, 108–09 (D.D.C. 2019) ("although the [agency] exceeded the statutory time period, there is no evidence that it did so in an extreme or egregious way and [ ] there is nothing about the [agency's] delay suggesting that it conducted its searches in anything other than good faith" (cleaned up)); *United Am. Fin., Inc. v. Potter*, 770 F. Supp. 2d 252, 258 (D.D.C. 2011), *aff'd*, 464 F. App'x 6 (D.C. Cir. 2012) ("It is true that this litigation stretched on for a period of almost four years, but

that is not evidence of obdurate behavior." (citation modified)); *Frye v. EPA*, Civ. A. No. 90-3041, 1992 WL 237370, at *3, 6 (D.D.C. Aug. 31, 1992) (agency conduct not unreasonable despite "delay of over two years" because plaintiff "pointed to nothing in the record that would support a finding of affirmative bad faith on the [agency's] part").

Despite the overly broad FOIA requests submitted by the Plaintiff, Defendants acted reasonably, in good faith, and employed extraordinary efforts to comply with their obligations under the FOIA to provide the Plaintiff with records requested as expeditiously as possible.  Under these circumstances, Plaintiff fails to demonstrate that Defendants' conduct was unreasonable, and the Court should find that Plaintiff is not entitled to a fee award.

## II.    The Court Should Deny Plaintiff's Fee Demand, on in the Alternative, Award A Substantially Reduced Award.

Plaintiff's fee demand is patently unreasonable and should be denied outright.  Nevertheless, to the extent the Court awards fees, certain entries should be excluded or substantially reduced for the reasons discussed further below.

### A.    The Court Should Decline to Grant the Fee Award.

Plaintiff's request that the taxpayer fund an award of $446,554.70is unreasonable on its face.  *See* Pl.'s Proposed Order (ECF No. 113-6).  In fact, in light of the procedural history described above, this request is so unreasonable that the Court should deny it outright.

Plaintiff claims, however, that it "exercised reasonable billing judgment in this near-eight-year litigation."  Pl.'s Mot. (ECF No. 113-1) at 17.  Plaintiff also claims that "[t]hough the resulting sum is undoubtedly significant, courts in this District have not hesitated to assess large awards in protracted FOIA litigations" and cites to only one case, *i.e.*, *Friends of the River v. Army Corps of Eng'rs*, Civ. A. No. 16-2327 (ZMF), 2025 WL 2267528 (D.D.C. August 8, 2025).  *Id.* at 18.  The procedural history in this case is easily distinguishable from *Friends of the River.*  There, the parties

briefed the government's motion to dismiss and "from 2017 to 2021, the parties filed three more rounds of dispositive motions" and "[those] motions ultimately narrowed the thrust of the case to whether the Corps properly withheld documents in its possession under relevant FOIA privileges." *Id.* at *1. Further, the Court determined that the government improperly withheld some records under the deliberative process privilege. *Id.* Here, Defendants undertook significant efforts to process Plaintiff's overly broad and unreasonably described FOIA requests and Plaintiff neither challenged the agencies' searches or any of the withholdings. Also, here, there were no dispositive, merits, or substantive briefing filed in this case and the Court issued no decision on the merits. Despite the mentioned differences, Plaintiff seeks close to the amount that was granted in *Friends of the River*, which is baffling to say the least. Plaintiff's fee demand is so unreasonable the Court should deny it outright. *See* Pl.'s Billing Entries (ECF Nos. 113-3, 113-5).

A court "may deny in its entirety a request for an outrageously unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Env't Def. Fund v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (citations omitted); *see also Baylor v. Mitchell Rubenstein & Assocs.*, *P.C.*, 857 F.3d 939, 954 (D.C. Cir. 2017) (Henderson, J., concurring) ("If a party seeks more than that—making an excessive demand in hopes that the award, although short of the demand, will be artificially high—a district court can impose a sanction to deter future violations and to protect the integrity of its proceedings"). The "bargaining tactic" of "mak[ing] an unreasonable opening offer in an effort to 'anchor' the ensuing give-and-take to an artificially high" figure "may be fine for selling a car or conducting a business negotiation. But a request for attorney's fees is not a negotiation." *Baylor*, 857 F.3d at 954 (Henderson, J., concurring). Applying these principles, the D.C. Circuit has

"award[ed]…none of the fee request" for "an attorney who billed an unreasonable amount of time for the work she produced." *Env't Def. Fund*, 1 F.3d at 1260.

Here, Plaintiff's fee demand itself is staggering. And the overall unreasonableness of Plaintiff's fee demand is a strong basis for this Court to exercise its discretion to deny Plaintiff fees *in toto*. *See Morley*, 894 F.3d at 391 ("the FOIA attorney's fees statute provides that the district court 'may' award fees to a prevailing plaintiff— and not 'must' or 'shall' award fees"). Indeed, an excessive "fee request is not victimless: the money has to come from someone." *Baylor*, 857 F.3d at 960 (Henderson, J., concurring).   In this case, the money would come from the taxpayers.

### B.    In the alternative, the Court Should Decline to Grant Fee Award for Certain Entries and/or Substantially Reduce the Fee Award for Certain Entries.

To the extent the Court awards fees, certain fees should be excluded or substantially reduced.   In resolving attorney's fees motions, "trial courts need not, and indeed should not, become green-eyeshade accountants.   The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).   Thus, a line-by-line supervision of billing practices is not necessary and waste of judicial resources. *See Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 295 (D.D.C. 2016).   A court "should exclude from [a] fee calculation hours that were not reasonably expended" and "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.   While the government recognizes that "trial courts need not, and indeed should not, become green-eyeshade accountants," *Fox*, 563 U.S. at 838, because of the unreasonable nature of Plaintiff's demand, the government avers that here, despite there being more than 900 entries, for the most part, it did a line-by-line accounting of the fee demand.   A closer look at Plaintiff's fee entries reveal that Plaintiff overbilled the government and a majority of the entries are indeed improper.

As explained below, Plaintiff's fee demand is unreasonable in numerous respects meriting at least a significant reduction of any attorney's fees award. Plaintiff's measly five percent discount does not account for the numerous deficiencies identified by the government. This Court thus should exercise its discretion to ensure that Plaintiff and its counsel do not reap a "windfall." *Id*.

      1.    <u>Time Spent on Activities Prior to Filing the Complaint.</u>

Plaintiff filed its Complaint on June 27, 2018, *see* Compl. (ECF No. 1); however, Plaintiff seeks compensation on some tasks for time incurred prior to the filing of the complaint and unrelated to the drafting to the complaint – i.e., demands approximately $12,963. *See* Pl.'s Ex. B (ECF No. 113-3) at 2–5. Courts in this District have held work performed pre-litigation or before the complaint is not compensable. *See Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 237 (D.D.C. 2011) (work performed during the pre-litigation administrative phase of a FOIA request is not recoverable under FOIA); *Nw. Coal. for Alternatives to Pesticides v. Browner*, 965 F. Supp. 59, 65 (D.D.C. 1997) (holding that work performed prior to filing the complaint was not compensable). As such, the Court should reduce the demand by $12,963.

      2.    <u>Time Spent on Clerical, Administrative, and Simple Tasks and Pro Hac Vice Motions.</u>[1]

Plaintiff demands fees related to its counsel performing clerical work or simple or administrative tasks such as archiving documents, uploading documents in "iManage," rescheduling meetings, sending calendar invites, drafting and filing notices of appearance and withdrawals, and finding replacements for attorneys. *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 12 (10/8/18 entry – "Complete conflicts check form related to setting up document review database");

---

[1]    Many of Plaintiff's fee entries are also deficient for the reasons discussed in the below sections. *See infra* at 15– 35.

*id.* at 29 (6/3/19 entry – "Uploading Cedarbaum notice of appearance into iManage"); *id.* at 31 (7/30/19 entry – "Scheduling calendar reminders based on defense's status report filing"); *id.* at 39 (6/22/20 entry – "Searching PACER, archiving recent filings in AIC FOIA litigation."); *id.* at 43 (1/4/21 entry – "File notice of withdrawal for Mr. Cedarbaum"); *id.* at 55 (11/14/23 entry – "Scheduling new partner connect meeting with A. Major, D. Yin re: AIC FOIA litigation"); *id.* at 57 (11/30/23 entry – "File notices of appearance, withdrawal"); *id.* at 66 (3/24/25 entry – "Schedule April 2025 Joint Status Report deadlines appointments in Outlook" and "archive PACER Notice of Appearance for new AUSA").  These are just a few examples, but the billing record annexed to Plaintiff's motion (ECF No. 113-3) has countless examples of deficiencies such as these.  The Court should not award counsel any time for this work.  *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (finding "[p]urely clerical or secretarial tasks" "should not be billed" even "at a paralegal rate"); *accord Michigan v. EPA*, 254 F.3d 1087, 1095 (D.C. Cir. 2001) (no fees for "purely clerical tasks" or "normal administrative overhead"); *In re Meese*, 907 F.2d 1192, 1203 (D.C. Cir. 199) (no fees for "tasks [like] delivering or picking up various documents as well as photocopying" (internal quotation marks omitted)); *Pigford v. Vilsack*, 89 F. Supp. 3d 25, 33 (D.D.C. 2015) ("These tasks did not require the skill and judgment of a lawyer"); *Friends of the River*, 2025 WL 2267528, at *9 (D.D.C. Aug. 8, 2025) (the attorneys cannot recover for clerical or administrative tasks); *Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1128 (TNM), 2023 WL 3478479, at *6 (D.D.C. May 16, 2023) ("The agency should not be billed for counsel's reading and re-reading of his own pleadings and FOIA requests.").

Nor should Plaintiff be compensated for work associated drafting, reviewing, filing *pro hac vice* motions.  *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 5 (6/25/18 entry – "Mr. Walsh's pro

hac vice motion and declaration"); *id.* at 6 (8/6/18 entry – "Attend DDC swearing in ceremony for FOIA matter"); *id.* at 10 (9/25/18 and 9/26/18 entries – "draft pro hac vice motion"); *id.* (9/26/18 entry – "Complete pro hac vice motion for admission to D.D.C."); *id.* at 50 (6/23/22 entry – "correspond re bar renewal"); *see Am. Immigr. Council v. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 412 (D.D.C. 2015) (The Court excluded fees relating to *pro hac vice* motions); *cf. Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 331 (D.C. Cir. 2004) ("[T]ime spent gaining admittance to the bar of this court should not be counted as attorney fees for purposes of the EAJA.").

Accordingly, because of such deficiencies, the fee demand should be reduced by $49,834

3.    Vague, Inappropriate, and Unnecessary Entries.

An attorney's fees award warrants a reduction if the plaintiff fails to document the fee entries sufficiently by offering vague or undetailed descriptions. *See Hensley*, 461 U.S. at 434 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Role Models Am., Inc.*, 353 F.3d at 971, 973 ("The law clerk's time records . . . give an identical one-line entry . . . on eight consecutive weekdays . . . Similarly inadequate are the numerous entries in which attorneys billed simply for 'research' and 'writing,' or for time spent in teleconferences or meetings—over one hundred in total—the purposes of which are not provided. . . [the] lead attorney also spent time after oral argument 'reviewing summary of argument,' 'reviewing cases,' and 'revising summary of argument,' but [ ] has not explained how these tasks helped it prevail" (cleaned up)); *Michigan v. EPA*, 254 F.3d 1087, 1093, 1095 (D.C. Cir. 2001) (reducing fees for entries that were "deficient entries, such as those listed only as 'conference calls' with no indication of who these calls were with or what they concerned," "vague and contain no useful breakdown of professional time by task," or were "devoid of any descriptive rationale for their occurrence"); *Louise Trauma Ctr. LLC*, 2023 WL 3478479, at *6–7 ("Other

entries show that [plaintiff's] request is unreasonable. . . counsel spent more than 15.4 hours 'reviewing,' 'studying,' or 'organizing' the 'entire file'…The agency should not be billed for counsel's reading and re-reading of his own pleadings and FOIA requests…The Court cannot imagine a less helpful description.").  Here, although the government provides a few examples, there are countless billing descriptions submitted by Plaintiff that are scanty and non-descriptive. *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 6 (8/1/18 entry – "Correspond with Ms. Braswell and client"); *id.* at 7 (8/23/18 entry – "Emails with Ms. Qian on status, outreach to AUSA, related matters"); *id.* at 9 (9/19/18 entry – "Review emails from AUSA and emails to team on next steps"); *id.* at 28 (5/20/19 entry – "Communications with Messrs. Asta, and Yin re developments"; *id.* at 29 (6/21/19 entry – "Participate in meet and confer with government"); *id.* at 34 (11/11/19 entry – "Managing location of government FOIA production within iManage"); *id.* at 36 (3/5/20 entry – "Confer with Ms. Creighton"); *id.* at 39 (6/29/20 entry – "Attention to communications regarding status of production"); *id.* (6/30/20 entry – "Plan for non-responsiveness document narrowing"); *id.* at 47 (11/3/21 entry – "Confer with E. Creighton, T. Johnson, C. Atkins re next steps"); *id.* at 49 (3/16/22 entry – "Organize document productions from agencies"); *id.* at 55 (10/16/23 entry – "Confer with E. Creighton re hand-over"); *id.* (11/14/23 entry – "Draft matter summary; correspond re supervising partner transition; draft correspondence to government"); *id.* at 58 (2/7/24 entry – "Correspond with D. Yin, D. Smith, J. Garcia re: potential DISCO review"); *id.* at 65 (2/20/25 entry – "Correspond with D. Yin re: R. Pinto email").  These, and numerous other, vague entries fail to provide any information about the issues being addressed, or explain how these tasks helped Plaintiff "prevail".  Fees "documentation and specification that do not adequately describe the legal work for which the client is being billed" makes "it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular

service or the amount of time expended on a given legal task." *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989). The Court should therefore exclude such entries, and reduction is proper to account for Plaintiff's failure to describe sufficiently the work for which it seeks public funds.

In addition, a court should not award fees for any "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Fabi Constr. Co. v. Sec'y of Lab.*, 541 F.3d 407, 411 (D.C. Cir. 2008) ("there are various entries that do not appear to be relevant . . . and therefore may not be included in an award"); *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) ("hours must be excluded . . . that are excessive, redundant or otherwise unnecessary" (cleaned up)); *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 224 (D.C. Cir. 1984) ("One cannot receive compensation for work that could have been avoided."); *Louise Trauma Ctr.*, 2023 WL 3478479, at *6 ("time entries show significant inefficiencies and a lack of billing judgment…every attorney who practices in this Court must certify their familiarity with both local and federal rules"). Plaintiff's fee demand contains numerous entries that reflect unnecessary and improper billing or on its face do not appear to be relevant to this matter, warranting a further reduction. *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 5 (6/25/18 entry – "send email to HHS FOIA officers"); *id.* at 6 (7/23/18 entry – "draft email to HHS"); *id.* at 10 (9/26/18 entry – "communications with Ms. Tian re: transfer of her responsibilities; communications with Ms. Tia"); *id.* at 18 (12/5/18 entry – ("researching U.S. District Court for D.C. local rules re: filing responses to scheduling motions"); *id.* at 25 (4/3/19 entry – "Communications with Mr. Yin re: finding a replacement for Mr. Walsh; draft email to Mr. Cedarbaum re: finding a replacement for Mr. Walsh"); *id.* at 37 (4/24/20 entry – "contacting Managing Attorney Office to prepare Notice of Appearance for John Walsh"); *id.* at 38 (4/29/2020 entry – "Reviewing and editing Notice of Appearance in preparation for Managing Attorney Office filing (0.4); corresponding with Mr.

- 17 -

Walsh for filing approval (0.1)"); *id.* at 58 (11/28/23 entry – "Correspond re notice of appearance, notice of withdrawal"); *id.* at 56 (11/29/23 entry – "Correspond re notice of appearance, notice of withdrawal"); *id.* at 58 (2/6/24 entry – Teleconference with R. Pinto, D. Yin, A. Coleman re: review platform questions (0.5); correspond, prepare for call with D. Yin, A. Coleman (0.5); run estimates, correspond with W. Robertson, D. Smith, J. Garcia, K. Donohoe, A. Coleman re: potential DISCO review (0.8)); *id.* at 63 (1/29/25 entry – "Correspond re database project"); *id.* at 65 (2/19/25 entry – "attend teleconference with D. Yin, T. Chau, T. Ryan re: Lit Support questions"); *see also, e.g.,* Pl.'s Ex. D (ECF No. 113-5) at 2 (10/5/18 entry – "e-mail to co-requesters asking for thoughts on HHS response"); *id.* (10/5/18 entry – "review IG report and respond to Wilmer team re adequacy of HHS response").

The examples mentioned above, while not exhaustive, illustrate the nature and degree of Plaintiff's improper overbilling. "[O]verbilling the government [is] a serious transgression, damaging to the public fisc and violative of the trust reposed in each member of the bar." *Env't Def. Fund*, 1 F.3d at 1260. "There is simply no excuse for a private attorney general billing the Government for [] unnecessary legal services." *Id.* Accordingly, for Plaintiff's improper billing practice, the Court should reduce Plaintiff's fee by $74,114.

4.    Legal Work Performed after August 14, 2025.

Plaintiff is not entitled to fees for legal work performed after August 14, 2025, which is the day the parties confirmed that all remaining issues were resolved besides Plaintiff's request for fees. *See* Jt. Status Report (ECF No. 107); *see also Bloomgarden v. Dep't of Just.*, 253 F. Supp. 3d 166, 180 (D.D.C. 2017) ("Plaintiff did not prevail on any issue after the Court ordered the government to disclose any segregable portions of the documents at issue on February 17, 2016…the Court therefore agrees with the government that plaintiff is not entitled to fees for legal work performed after this date."). Accordingly, Plaintiff's request should be reduced by $7,242

for fees relating to legal work after August 14, 2025, or that are not explicitly identified as fees relating to Plaintiff's fee motion. *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 70 (9/15/25 entry – "Draft Status Report,"); *id.* (9/16/25 entry – "Coordinate filing joint status report," and 10/27/25 entry – "Draft correspondence with D. Yin regarding status of matter, proposed briefing schedule."); *id.* at 71 (12/2/25 and 12/5/25 entries – "Correspondence re associate staffing"); *id.* at 71 (12/4/25 entry "Review, draft insert for Joint Status Report"); *id.* at 71 (12/8/25 entry "Confer with WilmerHale team; review complaint, correspondences").

        5.    Entries that Reflect Work on Matters Which Plaintiff Did Not Prevail or <u>Otherwise Achieve Success.</u>

In determining a reasonable fee, however, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. Plaintiff seeks approximately $21,012 relating to research for issues not raised or associated with any motion and an unopposed extension filed by the government and work relating to the unsuccessful attempt to oppose the government's request for extension of time and request to stay due to lapse in in 2018[2]. *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 6 (8/9/18 entries – relating to researching preservations requirements and disposition of records); *id.* at 6, 9, 10, 17, 18, 19 (7/31/18, 9/21/18, 12/5/18, 12/6/18, 12/13/18, 1/11/19, 1/13/19, 1/14/19, 1/18/19, and 1/23/19 entries – relating to briefing the government's extension and stay requests); *id.* at 36, 68 (2/4/20, 2/11/20, 2/12/20, and 6/18/25 entries – relating to researching issues such as sanctions and challenging the agencies' exemptions). The Court should not award counsel any time for this

---

[2]    The Court granted the government's request for extension of time and request to stay the matter due to the lapse in appropriations. *See* Jan. 24 and July 31, 2019, Orders (ECF Nos. 34 and 44).

work.  *See Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 239 (D.D.C. 2011) ("The plaintiff therefore never filed its motion for default judgment, notwithstanding that it had expended billable time in preparing this motion.  Because the court must not award fees for unnecessary work, the court declines to award fees for this motion") (citing *In re Donovan*, 877 F.2d 982, 990 (D.C. Cir. 1989); *Reilly,* 1 F.3d at 1258 ("In deciding the reasonableness of the hours reported, we properly disallow 'time spent in duplicative, unorganized or otherwise unproductive effort.'").

6.    Overstaffed

The number of attorneys staffed in this case was excessive and unwarranted. Only one attorney or at most two attorneys would have been sufficient for this matter, not ten (including eight attorneys from WilmerHale and two attorneys from American Immigration Council).  Courts will not tolerate a party's efforts to be compensated for "overstaffing and excessive use of attorney time…at government expense."  *Ashton v. Pierce*, 580 F. Supp. 440, 442 (D.D.C. 1984); *Bloomgarden*, 253 F. Supp. 3d at 179 ("one attorney well versed in FOIA litigation could have adequately represented plaintiff in this matter"). "Redundant hours generally occur where more than one attorney represents a client." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988); *Reyes v. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 169–71 (D.D.C. 2018) ("The Court will reduce Plaintiff's fee award . . . because the presence of two attorneys resulted in the unnecessary duplication of efforts and fees.").

Another court in this district has previously noted that this same Plaintiff had too many attorneys on another FOIA case.  *See, e.g.*, *Am. Immigr. Council*, 82 F. Supp. 3d at 411.  Here, "[n]othing about this case is so complex as to require so many hands-on deck; on the contrary, having [ten] attorneys working on and billing their time in a non-extraordinary FOIA case seems beyond the pale."  *Id.*  And "[o]verstaffing this case, moreover, led to overbilling" and "Plaintiff's

time sheets are replete with conferences among co-counsel attempting to coordinate case strategy and instances in which multiple attorneys billed for performing the same task." *Id.*; *see, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 7–8 (8/27/18 entries –a conference call billed by at least three attorneys); *id.* at 10–11 (9/26/18 entries – a meeting with at least four attorneys); *id.* at 13, 14, 15 (10/15/18 and 10/19/18 entries –multiple attorneys working on the same task, including try to determine how to respond to former AUSA Marina Braswell); *id.* at 33 (8/22/19 entry – two attorneys (Yin and Asta) both billed for conferring with the government); *id.* at 60, 61 (8/12/24, 8/19/24, 8/20/24, 8/22/24, 10/28/24, 11/7/24, 11/15/24, 11/19/24, 11/20/24, and 11/21/24 entries – multiple attorneys working on one joint status report); *id.* at 66 (1/31/2025 entry – multiple attorneys meeting to discuss at court order, production numbers, next steps."). By having ten attorneys, Plaintiff's counsel managed to quadruple, or more, its fees for performing tasks that at most should have taken one or two attorneys. The redundancy in attorney structure must be accounted for in determining an appropriate fee award and a further wholesale reduction in the fee award is justified by the duplication of attorney efforts in this matter.

Thus, taking in account of the number of attorneys and the countless entries involving duplicative efforts, the Court should reduce Plaintiff's fee demand across-the-board by an additional 50%, which is more than reasonable in light of the surplus of attorneys. *See, e.g., Bloomgarden*, 253 F. Supp. 3d at 179 (the Court reduced the plaintiff's fee demand by an additional 33% reduction is appropriate to account for the duplication of attorney efforts); *Am. Immigr. Council*, 82 F. Supp. 3d at 411 (the Court will reduce the plaintiff's total fee award by 25% as a commensurate counterweight to the surplus of attorneys); *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999) (*per curiam* ) (reducing sought fees by approximately 50%, citing as one reason the "unusually high number of

attorneys reviewing and editing briefs"); *Smith v. D.C.*, 466 F. Supp. 2d 151, 158–59 (D.D.C. 2006) (concluding that a 25% across-the-board reduction in fees was appropriate to account, in part, for "significant overstaffing").

7.    Blocked Billing

"[W]hen an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each task.  With such inadequate descriptions the court cannot determine with a high degree of certainty, as it must, that the billings are reasonable." *In re Olson*, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989) (footnote and internal quotation marks omitted); *see also Bloomgarden*, 253 F. Supp. 3d at 179 ("Even if tasks are adequately described, there is simply no way for the Court to assess whether the time spent on each of those tasks was reasonable or to make reductions to certain activities, like travel, when the tasks are lumped together.").

Here, many entries impermissibly lump together multiple tasks, which makes it impossible to evaluate their reasonableness.  *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3).  For example, on June 25, 2018, Attorney Ni Qian billed for "[r]eview and edit complaint; Mr. Walsh's pro hac vice motion and declarations; send email to HHS FOIA officers; fill out filing papers for DDC; review exhibits to complaint" and on the same day another attorney billed for "[v]arious emails on filing on Wednesday, and press strategy; review and revise draft complaint and recirculate; various emails regarding pro bono opportunities."  Pl.'s Ex. B (ECF No. 113-3) at 5. As another example, on August 8, 2018, Attorney Chris Asta billed for "[p]articipate in team call; review communications concerning CBP records destruction; communications with Ms. Qian re: case overview; review proposed email from Ms. Qian to be sent to HHS; research preservation requirements tied to FOIA requests and filing of a lawsuit."  *Id.* at 6.  In addition, on November 29, 2023, Attorney David Yin billed for "[c]orrespond re notice of appearance, notice of withdrawal; draft correspondence

- 22 -

to CBP." *Id.* at 56. Although this is not an exhaustive list, these examples show that Plaintiff attempts to bill the government for a mix of vague tasks or tasks that have no relevance to the claims in this matter (i.e., tasks relating to HHS (a non-party agency) or discussing notice of appearances and withdrawals) with potentially "reasonable" tasks. With these types of entries, and many more in Plaintiff's billing log, there is no way to decipher whether a reasonable amount of time was spent on the tasks Plaintiff could potentially bill for. Although, block billing is not "prohibit[ed]," courts often reduce fee awards as a result of it. *Bloomgarden*, 253 F. Supp. 3d at 179 (citing examples). "Thus, given the difficulty of disambiguating the block billed entries …the Court [should] reduce plaintiff's recovery by an additional [5%]." *Id.*

        8.    <u>Reviewing Records.</u>

        Plaintiff's fee demand includes hours for records review and discussions relating to the Defendants' production. *See, e.g.*, Pl.'s Ex. B (ECF No. 113-3) at 25 (4/5/19 entry – "Review production from ICE"); *id.* at 34 (9/30/19 entry – "Review productions from DHS, ICE, and CBP"); *id.* at 36 (1/31/20 entry – "Review production from DHS, CBP"); *id.* at 37 (4/9/20 entry – "review productions from DHS, CBP"); *id.* at 48 (12/31/21 entry – "Review production from DHS"); *id.* at 65 (6/20/25 entry – "Review CBP documents"). These are only a few examples, but there are numerous such as these. "Generally, plaintiffs should not recover fees for time spent reviewing responsive documents, because the lawyers would have performed that task even in the absence of litigation." *Urban Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 324 (D.D.C. 2020) (citations omitted); *see also Am. Immigr. Council*, 82 F. Supp. 3d at 412 ("plaintiff is not entitled to recover for time spent reviewing the documents it instituted [a] lawsuit to obtain." cleaned up and citation omitted). The government, however, recognizes that document review was likely necessary in this litigation to evaluate the agencies' releases in this litigation. *See Elec. Privacy Info. Ctr.*, 811 F. Supp. 2d at 240 ("[I]t would seem critical to the prosecution of a FOIA lawsuit

for a plaintiff to review an agency's disclosure for sufficiency."); *Elec. Privacy Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 351 (D.D.C. 2014) (finding it "reasonable that EPIC's counsel reviewed the 2,462 pages of documents the FBI produced during this case to ensure the agency's compliance with FOIA" and court order).  Regardless, reviewing the produced records served a dual purpose, that such fees should be reduced significantly, especially because the parties never engaged in motion practice.  *See Brennan Ctr. for Just. v. Dep't of Homeland Sec.*, Civ. A. No. 16-1609 (ABJ), 2019 WL 280954, at \*4 (D.D.C. Jan. 22, 2019)*; see also Urban Air Initiative*, 442 F. Supp. 3d at 325 ("For those reasons, it was not unreasonable for the plaintiffs to propose including a percentage of the time spent on document review in their calculation; plaintiffs seek 25% of the total amount of time spent on document review.").  As such, the Court should reduce Plaintiff's recovery by an additional 20%.

### III.    The Court Should Deny or Reduce the Fees-on-Fees Award Because It Is Excessive.

Plaintiff seeks approximately $44,954 for fees relating to its fee demand and motion. Should the Court award any fees, it should eliminate or significantly deduct the fees counsel has spent briefing the initial fee petition and any reply.

Although "hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive." *Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1128 (TNM), 2023 WL 3478479, at \*7 (D.D.C. May 16, 2023) (quoting  *Urban Air Initiative v. EPA*, 442 F. Supp. 3d 301, 326 (D.D.C. 2020)).  "[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *INS v. Jean*, 496 U.S. 154, 163 n.10 (1990).  Thus, "[i]f counsel makes inflated or outrageous fee demands, the court could readily deny compensation for time spent in pressing them, since that time would not have been reasonably spent." *Trichilo v. Sec'y of Health & Hum. Servs.*, 823 F.2d 702, 708 (2d Cir. 1987) (internal quotation marks omitted).  Here, Plaintiff presented an outrageous fee demand,

one that demonstrates a lack of billing judgment and includes an overwhelming number of entries that are impermissible, excessive, or unnecessary. *See supra* § II. As Plaintiff's fee petition is deficient in myriad aspects, the Court should eliminate the entirety of the fees on fees that Plaintiff seeks (approximately $44,954, plus any amount for Plaintiff's reply).

To the extent the Court is inclined to award fees-on-fees, at minimum, the Court should significantly reduce Plaintiff's request for reimbursement of fees on fees if any award is made. This Court should significantly reduce any fees-on-fees award to account for Plaintiff's limited degree of success in this attorney's fees litigation. As discussed above, Plaintiff's FOIA request were unreasonably described which delayed processing, there was no merits briefing in this matter, Plaintiff over staffed this FOIA matter, and billed for activities that should be eliminated in its entirety or reduced significantly. *See supra* § II. The principle that "the most critical factor is the degree of success obtained," *Hensley*, 461 U.S. at 436, applies no less to attorney's fees litigation than to any other aspect of the case. *Prunty v. Vivendi*, 195 F. Supp. 3d 107, 117 (D.D.C. 2016) ("the court reduces the fees-on-fees award to reflect Defendants' degree of success on their fee petition"); *Sierra Club v. Jackson*, 926 F. Supp. 2d 341, 350 (D.D.C. 2013) ("A party seeking fees for fees should not receive fees for the time spent defending aspects of the fee application that were unsuccessful" (cleaned up)). Accordingly, "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Immigr. & Naturalization Servs. v. Jean*, 496 U.S. 154, 163 n.10 (1990).

Ultimately, to award Plaintiff approximately $44,954 would be a windfall for what ended up being a straightforward case with no substantive briefing. *Louise Trauma Ctr. LLC v. Dep't of Just.*, Civ. A. No. 20-3517 (RC), 2024 WL 4227635, at *9 (D.D.C. Sept. 18, 2024); *Louise Trauma Ctr.*, 2023 WL 3478479, at *7. Because "trial courts need not, and indeed should not, become

green-eyeshade accountants," *see Louise Trauma*, 2023 WL 3478479, at *6, for such a straightforward case like this one, in light of Plaintiff's unreasonably high demand, any fee award is excessive in order to send a signal to Plaintiff and others like it that, if they "los[e] sight of the real party in interest," *Baylor*, 857 F.3d at 960 (Henderson, J., concurring)—which here is the public and its interest in learning what its government is up to—then there were will be a real consequence for Plaintiff having allowed the "tail to wag the dog . . . in this case,'" *id.* at 959 (citation modified), namely this Court should exercise its "discretion to deny an award altogether," *id.* at 954.

If the Court determines that some award is warranted, to the extent that Courts award fees on fees at all in this District, awards tend to be no more than $10,000. *Louise Trauma*, 2024 WL 4227635, at *9 (awarding $10,000 for fees on fees when initial request was for $35,508.00 for 44 hours); *Louise Trauma*, 2023 WL 3478479, at *7 (awarding $10,000 for fees on fees when initial request was $45,044 for 56.7 hours); *Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301, 327 (D.D.C. 2020) (awarding $10,000 for fees on fees when initial request was $35,574.10 for 90.9 hours).

Accordingly, whether the Court awards Plaintiff nothing or $10,000 for fees on fees, under no circumstances should Plaintiff be awarded the $44,954 that it seeks.

\*    \*    \*

The Court should deny outright Plaintiff's patently unreasonable demand or at the very least a substantial reduction of Plaintiff's fee demand is warranted.  Ultimately, the D.C. Circuit has instructed that district courts exercising their discretion over applications for attorney's fees are "duty bound to recall that Congress required [courts] to exercise [their] independent judgment on the reasonableness of all fees requested before taxing them against the United States." *In re*

*North (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995).  Courts have considerable discretion regarding reductions in the bill when the applicants have failed to carry their heavy burden of presenting well-documented claims for fees.  *See Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) ("there is a point at which thorough and diligent litigation efforts become overkill.  The district court must disallow claims for 'excessive, redundant, or otherwise unnecessary charges, . . . and the determination of how much to trim from a claim for fees is committed to the court's discretion."); *see Am. Petrol. Inst. v. EPA*, 72 F.3d 907, 912–15 (D.C. Cir. 1996). Courts also have a particular duty to scrutinize bills for attorneys' fees which the government is being called upon to pay.  *Copeland v. Marshall*, 641 F.2d 880, 888 (D.C. Cir. 1980).

Given the inadequate justification for their billing, as well as the sheer excess, improper, and non-compensable work evident in Plaintiff's billing records, should the Court nonetheless award counsel a fees, the Court should reduce the total amount by approximately $165,165  in light of the deficiencies identified in sections II(B)(1) – (5), then make an additional reduction of 75% which is justified for the reasons discussed above in sections II(B)(6) – (8), and award either zero (or no more than $10,000 for fees-on-fees should the Court nonetheless award counsel a fee). In sum, Plaintiff should not be awarded no more than $70,000.

*    *    *

**CONCLUSION**

For these reasons, the Court should deny Plaintiff's motion for an award of attorneys' fees

entirely.

Dated: February 13, 2026
       Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:_____ */s/ Stephanie R. Johnson*
    STEPHANIE R. JOHNSON,
      D.C. Bar # 1632338
    Assistant United States Attorney
    Civil Division
    601 D Street, NW
    Washington, DC 20530
    (202) 252-7874
    Stephanie.Johnson5@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICAN IMMIGRATION COUNCIL,

   Plaintiff,

  v.

U.S. IMMIGRATION & CUSTOMS
ENFORCEMENT, et al.,

   Defendants.

---

Civil Action No. 18-1531 (RCL)

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for attorney's fees, Defendants' opposition, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED, and it is further

ORDERED that this matter is DISMISSED WITH PREJUDICE.


SO ORDERED:


_____
Date               Royce C. Lamberth
                  United States District Judge