## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-1531 (RCL) |
| U.S. IMMIGRATION & CUSTOMS ENFORCEMENT, et al., | ) |
| Defendants. | ) |

### DECLARATION OF CATRINA M. PAVLIK-KEENAN

I, Catrina M. Pavlik-Keenan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Privacy Office of the U.S. Department of Homeland Security ("DHS" or the "Department"). I have held my current position since July 4, 2021. Prior to holding this position, I was the U.S. Immigration and Customs Enforcement ("ICE") FOIA Officer from December 18, 2006, until July 3, 2021. Prior to holding that position, I worked for approximately four years in the FOIA office at the Transportation Security Administration ("TSA"), first as a Supervisory FOIA Analyst, then as Deputy Director for two years, and finally as Director. Prior to working at TSA, I worked for approximately nine years as a FOIA Analyst at the Department of Transportation, holding positions at the Federal Highway Administration, Office of Pipeline Safety, and Office of the Secretary from 1993 to 2002. In total, I have 30 years of experience processing FOIA requests.

2.      The Privacy Office enables the Department to accomplish its mission while enforcing privacy protections in all DHS activities. DHS systems, technology, forms, and

programs that collect personally identifiable information or have a privacy impact are subject to the oversight of the Chief Privacy Officer and the requirements of federal data privacy and disclosure laws.

3.        DHS's FOIA Division ("DHS-FOIA") sits within the Department's Privacy Office.  As the Deputy Chief FOIA Officer for the Privacy Office, I act as DHS's principal point of contact and agency representative on FOIA-related matters for DHS Headquarters ("DHS-HQ") and all the DHS components.  My official duties and responsibilities include the implementation of consistent FOIA management across DHS in collaboration with DHS components.  In accordance with this responsibility, I maintain expert knowledge of the DHS FOIA regulations and routinely provide regulatory and policy guidance, technical advice, and assistance across the Department on all FOIA-related matters.

4.        I make this declaration to provide the Court with additional information to support the Defendants' Opposition to Plaintiff's Motion for Attorney's Fees.  The statements contained in this declaration are based upon my personal knowledge, my review of the documents kept by DHS-FOIA in the ordinary course of business, and information provided to me by other DHS-HQ employees in the course of my official duties.

**Plaintiff American Immigration Council ("AIC") FOIA Request**

5.        On April 3, 2018, DHS received Plaintiff's FOIA request for "any and all records that were prepared, received, transmitted, collected and/or maintained by the Department of Homeland Security, including all its component agencies (collectively, hereafter, "DHS") that describe, refer, or relate to the policies, guidelines, or procedures followed or used by DHS, the Department of Health and Human Services (with all its component agencies, collectively, "HHS"), and the Department of Justice (with all its component agencies, collectively "DOJ"), to

address the processing and treatment of families, including any group of two or more persons

holding themselves out as such, containing at least one adult family member and one minor

child, who arrive, or are found inadmissible, at the border, particularly the U.S.-Mexico border,

including ports of entry.  Requesters are particularly interested in records that relate or touch on

in any way the separation of adult family members from minor children; after separation, the

process for detaining the adult family members and minor children in different DHS, HHS, or

DOJ facilities; and the criminal prosecution of adult family members."  Plaintiff's FOIA request

is annexed hereto as Exhibit A.  Plaintiff's lengthy FOIA request was three pages long and

contained 20 different parts and subparts.

6.     On April 5, 2018, the DHS Privacy Office responded to AIC acknowledging

receipt of the FOIA request, advising that the Department processes FOIA requests according to

their order of receipt, and stating that since the request "seeks documents that will require a

thorough and wide-ranging search," DHS is invoking a 10-day extension.  DHS invited the

requester to contact DHS Privacy Office "to narrow the scope" of the request.  The requestor did

not respond to the narrowing request.  The acknowledgment is attached hereto as Exhibit B.

7.     On April 5, 2018, DHS Privacy Office sent an additional letter to the requestor

advising that due to the subject matter of the request, DHS Privacy Office was transferring the

request to the FOIA officer for U.S. Customs and Border Protection ("CBP") and U.S.

Immigration and Customs Enforcement ("ICE").  The correspondence is attached hereto as

Exhibit C.

8.     In addition, DHS Privacy Office determined that the DHS Office of Policy was

the Office within DHS most likely to have responsive records and on April 5, 2018, requested

that the DHS Office of Policy conduct a search for potentially responsive documents to the FOIA

request.  DHS Privacy Office sent several remainders to follow up on the tasking on April 27, 2018; May 10, 2018; and May 21, 2017, respectively.

9.      Plaintiff's FOIA request was not reasonably described or manageable because of its extreme breadth.  Plaintiff made no attempt to scope or focus their request on any specific type of record but cast the broadest net possible to capture basically any type of communication, regardless of the context, that related to the underlying subject matter.  The lack of such focus required DHS to find every needle in a massive haystack.

10.      Plaintiff filed a complaint on June 27, 2018.

## DHS Efforts to Scope the FOIA Request

11.      In an attempt to make Plaintiff's request more manageable and thereby reduce the length of time it would take for DHS to provide Plaintiffs the documents they sought, DHS, in good faith, discussed possible key terms for additional searches in response to Plaintiffs request with the other Defendants, ICE and CBP.  DHS also reached out to Plaintiff to determine whether any of the multiple parts of this request could be combined or narrowed to provide Plaintiffs with the records they were seeking as expeditiously as possible.

12.      On September 19, 2018, DHS provided Plaintiffs with proposed search terms and indicated that "certain searches for responsive documents have already been undertaken. The attached proposed search terms are intended to complete the search process using terms agreed by the parties."

13.      On September 28, 2018, Plaintiff provided a response to proposed search terms, including requested custodians (by position; not name) and key terms.  DHS promptly identified initial issues with the custodians (for example, some custodians/positions were not within DHS HQ).

14. DHS and Plaintiff met to further discuss the search parameters in October 2018.

15. On November 2, 2018, DHS received Plaintiff's "memorialization" of the proposed search terms and custodians; however, it did not accurately reflect what DHS expressed to Plaintiff during the call about the proposed custodians and included additional ambiguities that required further clarification. DHS provided comments and sought clarification on the custodians within days of receiving Plaintiff's memorialization. Later that month, DHS received clarification from Plaintiff about the search.

16. DHS did not halt its activity in fulfilling Plaintiff's FOIA request, but actively pursued tools available to respond to the request, despite Plaintiff's lack of reasonable effort in scoping the request and the proposed custodians. For example, DHS Privacy was actively trying to determine whether the positions identified by the Plaintiff exist in the Department as well as all the names of individuals who occupied the various positions requested over the prior two years. Through internal discussions, DHS Privacy was able to confirm that some of the positions did not actually exist within DHS.

17. Because of the length of time it takes to conduct electronic searches and the amount of resources these searches consume – to the detriment of other ongoing FOIA and discovery searches – DHS Privacy generally waits to resolve all the search parameter issues prior to tasking the DHS Records Management Division within the Chief Information Office ("CIO") to search for potentially responsive records. In this case, because Plaintiff's request was unreasonably broad, involved 19 different search requests, and spanned across multiple offices, DHS Privacy waited for the parties to agree on all search terms and custodians before tasking the CIO with running searches. For example, given the complexity of the proposed search terms, the Records Management Division within the CIO indicated that it could take several hours to build

out the search tasker per individual custodian (as opposed to waiting to have a final list of custodians and being able to list all the custodians in one search tasker).

18.    The initial search results based on Plaintiff's overly broad search parameters were so large that the DHS Privacy Office server did not have sufficient capacity to handle it.  That search produced 1.643.8 terabytes of data.  This corresponds to approximately 1,618,157 items (emails).  Based on DHS Privacy Office's experience, the size of such emails and possible attachments can range anywhere from one page to thousands of pages.  DHS did not have the capabilities ans the space to upload such a large amount of data onto its FOIA processing tool to provide an actual page count.

19.    In light of the voluminous search result, the parties conferred again to discuss Plaintiff's questions about how the search was conducted and how to further reduce the amount of data returned.

20.    In February 2019, Plaintiff sent revised key terms and in March 2019, indicated that they were requesting all Office for Civil Rights and Civil Liberties ("CRCL") complaints that pertained to or stemmed from the separation of families at the border.

21.    DHS advised the Plaintiff that while DHS can estimate *the number* of complaints received on family separation, DHS would need to open each document in the complaints database separately and manually download it to its FOIA processing tool.

22.    During the initial review, DHS encountered certain technical difficulties with downloading such complaint documents from its database to the FOIA processing tool, such as corrupted files.  To address this, DHS worked with the developer of the system to fix the problems.

23.     Throughout this time, DHS continued to provide Plaintiff with information on the responsive data as well as the technical review limitations with the CRCL complaints.

24.     On September 30, 2019, after DHS was able to properly scope Plaintiff's overly broad request, DHS made the first release to Plaintiff and monthly thereafter, processing at least 500 pages monthly.

25.     In December 2019, DHS again met with Plaintiff to discuss the CRCL records. DHS explained the need to refer and/or consult on most of the CRCL complaints with the originating component/office that was making the complaint to CRCL and owned the underlying information (for example, HHS and the DHS Office of Inspector General).

26.     Following the December 2019 meeting, DHS provided the Plaintiff spreadsheets of the CRCL complaints, which listed and summarized complaints received by CRCL in 2017 as well as complaints received between June 2018, and October 2019, that relate to the separation of children from their parents or guardians by DHS.  DHS invited the Plaintiff to identify specific complaints that they would like to see to help speed up processing of the CRCL complaints and ensure the Plaintiffs were receiving records expeditiously.

27.     Throughout this time and thereafter, the DHS Privacy Office was following up with other agencies relating to the consultations that were sent by DHS.

28.     In August 2020, Plaintiff informed DHS that it did not need to see anymore CRCL complaints and that they wanted DHS to proceed with processing documents received through the CIO search without further narrowing.  The CIO search pulled records based on key words that were negotiated and agreed to by the parties.

29.    DHS conducted an initial responsiveness review prior to loading the records onto its FOIA processing tool and was able to remove some records that were deemed non-responsive.

30.    Prior to loading the records onto its FOIA processing tool, DHS again offered Plaintiff another chance to narrow the records by suggesting additional key words.  DHS also informed plaintiff that once DHS loaded the documents onto the FOIA processing tool, DHS did not have the capability to conduct additional searches on the records retrieved based on focused key terms.

31.    In August 2022, except for the records that DHS Privacy sent to other agencies for consultation, DHS completed producing all non-exempt records.

32.    DHS continued to follow up repeatedly with agencies to which consultations were sent.

33.    In August 2023, DHS made a production of documents it received back from consultation and additional records it received as a referral from ICE.

34.    On May 16, 2025, DHS made the 38th and final response to Plaintiff, including documents it received back from consultations and additional documents it received as a referral form CBP.  As of that date, DHS has completed processing and produced all non-exempt responsive records.

35.    DHS produced a total of 12,911 pages responsive to Plaintiff's FOIA request.

36.    Despite the overly broad FOIA request submitted by the Plaintiff, DHS acted in good faith to comply with its obligations under the FOIA to provide the Plaintiff with records requested as expeditiously as possible, including by prioritizing processing of CRCL complaints and searching custodians and key terms identified by Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 13th day of February, 2026

CATRINA M PAVLIK KEENAN

Digitally signed by CATRINA M PAVLIK KEENAN
Date: 2026.02.12 15:26:12 -05'00'

Catrina M. Pavlik-Keenan

# EXHIBIT A

WILMERHALE

April 3, 2018

**John Walsh**

+1 202 663 6000 (t)
+1 202 663 6363 (f)
john.walsh@wilmerhale.com

VIA ELECTRONIC MAIL

Sam Kaplan
Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane, SW
STOP-0655
Washington, DC 20528-0655

Avery Roselle
FOIA Officer
Office of the Inspector General (OIG) Office of Counsel
Department of Homeland Security
245 Murray Lane SW
Mail Stop – 0305
Washington, DC 20528-0305

Dear FOIA Officers:

Please find attached a request for information under the Freedom of Information Act (FOIA) from the American Immigration Council, National Immigrant Justice Center, Women's Refugee Commission, Kids in Need of Defense, and the Florence Immigrant and Refugee Rights Project (Requesters). We represent these organizations in this FOIA request, so please direct any legal questions to us. The applicable documents, however, should be produced to Katie Shepherd of the American Immigration Council. Her address is:

> Katie Shepherd
> American Immigration Council
> 1331 G Street NW, Suite 200
> Washington, DC 20005
> Phone: 202-507-7520
> KShepherd@immcouncil.org

WilmerHale

Page 2

Thank you for your prompt attention to this matter.

Sincerely,

John Walsh
Ni Qian
Wilmer Cutler Pickering
Hale and Dorr LLP
1225 17th St., Suite 2600
Denver, CO 80202
Phone: 720-274-3135
Facsimile: 720-274-3133
john.walsh@wilmerhale.com
ni.qian@wilmerhale.com



April 3, 2018

<u>VIA ELECTRONIC MAIL</u>

Sam Kaplan
Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane, SW
STOP-0655
Washington, DC 20528-0655

Avery Roselle
FOIA Officer
Office of the Inspector General Office of Counsel
Department of Homeland Security
245 Murray Lane SW
Mail Stop – 0305
Washington, DC 20528-0305

Re:    <u>Freedom of Information Act (FOIA) Request</u>

Dear FOIA Officers:

The American Immigration Council, National Immigrant Justice Center, Women's Refugee Commission, Kids in Need of Defense, and the Florence Immigrant and Refugee Rights Project (the "Requesters") submit this letter as a request for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq*.[1]

---

[1]    Corresponding FOIA requests were sent to the following FOIA Officers at the respective agencies: Catrina Pavlik-Keena, the FOIA Officer for U.S. Immigration & Customs Enforcement (ICE); Bradley White, the FOIA Officer for the Office for Civil Rights and Civil Liberties; Sabrina Burroughs, the FOIA Officer for the U.S. Customs and Border Protection; Amanda Jones, Chief FOIA Officer for the Criminal Division of the Department of Justice (DOJ); Deborah Waller, Government Information Specialist for the Office of the Inspector General at DOJ; the FOIA Officer for the U.S. Marshals Service; Melissa Golden, the FOIA Specialist for the Office of Legal Counsel at DOJ; Laurie Day, the Chief of Initial Request Staff for the Office of the Attorney General at DOJ; Hirsch D. Kravitz, the FOIA Officer for the Civil Division of Department of Justice (DOJ); Joseph R. Schaaf, the FOIA Officer for the Executive Office for Immigration Review (EOIR) at DOJ; Kevin Krebs, the FOIA Officer at the Executive Office for United States Attorneys at the DOJ; Kimberly Epstein; the Acting FOIA Officer for Administration for Children and Families; Michael Marquis, the FOIA Officer for U.S. Department of Health and Human Services (HHS); Harold Henderson, the FOIA Officer for the Office for Civil Rights at HHS; and Robin Brooks, the FOIA Officer for the Office of Inspector General at HHS.

## 1.    REQUEST FOR INFORMATION

The Requesters seek any and all records[2] that were prepared, received, transmitted, collected and/or maintained by the Department of Homeland Security, including all its component agencies (collectively, hereafter, DHS) that describe, refer, or relate to the policies, guidelines, or procedures followed or used by DHS, the Department of Health and Human Services (with all its component agencies, collectively, HHS), and the Department of Justice (with all its component agencies, collectively "DOJ"), to address the processing and treatment of families, including any group of two or more persons holding themselves out as such,  containing at least one adult family member and one minor child[3], who arrive, or are found inadmissible, at the border, particularly the U.S.-Mexico border, including ports of entry. Requesters are particularly interested in records that relate or touch on in any way the separation of adult family members from minor children; after separation, the process for detaining the adult family members and minor children in different DHS, HHS, or DOJ facilities; and the criminal prosecution of adult family members.

Requesters seek the above records for the period between October 2016 and the date of the final response to this request. Please construe this as an ongoing FOIA request, so that until a proper and adequate search is conducted, any records that come within the possession of the agency prior to the final response to this FOIA request be considered within the scope of the request.

The requested records include, but are not limited to:

1.  All records regarding the past or planned implementation and use of any electronic system, including Sigma and E3, to track instances in which at least one child is separated from at least one adult family member while in the custody of CBP. Records should include all data fields contained in the tracking system, such as:

    (a)  Unique identifier;

    (b)  Event area of responsibility;

    (c)  Title of officer who apprehended or encountered individual;

---

[2]    The term "records" as used herein includes, but is not limited to: communications, correspondence, directives, documents, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, standards, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training materials, and studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing marginal notations.

[3]    For the purposes of this Request, "child" refers to individuals under the age of 18. The term "families" as used in this Request includes any adult traveling with a child who claims to be the mother, father, or primary caregiver of that child, including cases where evidence of the family relationship is not yet proven or where the agency alleges or suspects the relationship is not bona fide.

(d) Title of officer who referred non-citizen adult for criminal prosecution, if applicable;

(e) Citizenship country;

(f) Case status for adult/child;

(g) Whether family relationship is verified, and by what means;

2. All records related to any past, current, or planned policy, guidance, or recommendation regarding the separation of families who arrive at the border, particularly the U.S.-Mexico border, including ports of entry;

3. All records related to past or planned training of DHS personnel regarding screening of adult family members for referral for criminal prosecution for immigration violations;

4. All records related to past or planned training of DHS personnel regarding treatment of adult family members and minor children in ICE or CBP custody who have been separated from adult family members while in ICE or CBP custody;

5. All records related to DHS's practices or protocols for coordinating the location of, and communication (telephonic, video, or in-person) between, an adult family member and a minor child, following separation of the adult family member from the child while in CBP or ICE custody;

6. All records related to coordination among CBP, ICE, and DHS regarding the processing and handling of the separation of adult family members from minor children;

7. All records related to coordination between DHS and HHS regarding the separation of adult family members from minor children, including the separate sheltering of those minor children;

8. All records related to coordination between DHS and DOJ regarding the criminal prosecution of any such families or noncitizen parents;

9. All records related to DHS's practices or protocols for verifying a family relationship prior and subsequent to separation of an adult family member and a minor child, including the use of DNA testing;

10. All records related to DHS's practices or protocols outlining the process that must be followed and the evidentiary standard that must be met prior to the separation of an adult family member from a minor child on the basis of an allegation or suspicion that the family relationship is not bona fide;

11. All records containing the following data, broken down by month where possible:

a. The number of minor children separated from an adult family member by DHS personnel while in CBP or ICE custody;

b. The number of minor children separated from a legal guardian or at least one parent by DHS personnel while in CBP or ICE custody;

c. Where at least one child is separated from at least one accompanying adult family member while in CBP or ICE custody, the number of instances in which adult family members were referred by CBP or ICE for criminal prosecution;

d. Of the total number of adult family members separated from a minor child while in CBP or ICE custody, the number of convictions entered for the adult family members for "smuggling" under 8 U.S.C. Sec. 1324, "illegal entry" under 8 U.S.C. Sec. 1325, "illegal reentry" under 8 U.S.C. Sec. 1326, or other federal charges (broken down by statute of conviction);

e. Of the total number of adult family members who were convicted for an immigration violation, including "smuggling," "illegal entry" or "illegal reentry," the total number of such individuals who were ultimately removed from the United States, as broken down by conviction;

f. Of the total number of adult family members who were convicted for an immigration violation, including "smuggling," "illegal entry" or "illegal reentry," the total number of such individuals who were transferred to the custody of U.S. Marshals Service;

g. Where at least one child is separated from at least one accompanying adult family member while in DHS custody, the number of instances in which DHS has effectuated the separation due to allegations or suspicion that the family relationship is not bona fide;

h. The number of noncitizen adult family members who have been referred for a credible fear interview or reasonable fear interview by CBP after being separated from at least one related minor child;

i. The number of minor children who departed the United States on an order of voluntary departure after being separated from an adult family member while in CBP or ICE custody; and

j. All complaints received by DHS, including those received by the  regarding the separation of families.

The Requesters ask that any records that exist in electronic form be provided in their native electronic format on a compact disc, digital video disk, or equivalent electronic medium. Requesters ask that any documents stored in Portable Document Format ("PDFs") be provided as individual files in a searchable PDF format. Finally, Requesters ask that reasonable metadata be

transmitted along with files, including but not limited to maintaining parent-child relationships between emails and their attachments, author information, as well as date and time stamp information. If any of the requested records or information are not kept in a succinct format, we request the opportunity to view the documents in your offices.

All requested records that are responsive may be provided with personally identifying details redacted. FOIA exempts information from disclosure if that disclosure would lead to an unwarranted invasion of privacy. 5 U.S.C. § 552(b)(6). Determination of this exemption requires a balancing of the public's interest in obtaining the information against any possible invasions of privacy which would result from disclosure. *See, e.g., Wood v. FBI,* 432 F.3d 78, 87-89 (2d Cir. 2005). The Supreme Court has held that this balancing act does not preclude the disclosure of military records when names and other private details are redacted. *See Dep't of the Air Force v. Rose,* 425 U.S. 352 (1976). Requesters expect the release of all segregable portions of otherwise exempt material.

If, under applicable law, any of the information requested is considered exempt, please describe in detail the nature of the information withheld, the specific exemption or privilege upon which the information is withheld, and whether the portions of withheld documents containing non-exempt or non-privileged information have been provided.

## 2.    REQUEST FOR WAIVER OF FEES

We ask that the agency waive all fees associated with this FOIA request. Such a waiver is warranted because disclosure of the information is "...likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k) (records furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in commercial interest of institution). In addition, the Requesters have the ability to widely disseminate the requested information. *See Judicial Watch v. Rossotti,* 326 F.3d 1309 (D.C. Cir. 2003) (finding a fee waiver appropriate when the requester explained, in detailed and non-conclusory terms, how and to whom it would disseminate the information it received).

### a)  *Disclosure of the Information Is in the Public Interest*

Disclosure of the requested information will contribute significantly to public understanding of government operations and activities related to the processing and treatment of adult noncitizens seeking asylum and/or expressing fear of return to their countries of origin who arrive at ports of entry with their minor children. Such information is of great public interest given the news coverage and public discussion raising serious criticism and concerns related to the

practice of family separation.[4]  A better understanding of the family separation practices currently in place are critically important to assist attorneys, non-citizens, and the general public in understanding how the U.S. government treats families who seek safe haven in our country.

As discussed below, Requesters have the capacity, intent and demonstrated ability to disseminate the requested information to a broad cross-section of the public.

Requesters are all non-profit organizations established to increase public understanding of immigration law and policy, advocate for the fair and just administration of our immigration laws, protect the legal rights of noncitizens, and educate the public about the enduring contributions of America's immigrants.  Each Requester researches issues related to immigration, and regularly provides information to leaders on Capitol Hill, the media, and the general public.  Each Requester work with other immigrants' rights organizations and immigration attorneys across the United States to advance the fair administration of our immigration laws.  Furthermore, some Requesters have synthesized and disseminated information from prior FOIA requests to facilitate the sharing of this information with a broad public audience.  *See, e.g.*, *Behind Closed Doors: An Overview of DHS Restrictions on Access to Counsel,* a report summarizing certain key documents released by DHS agencies in response to FOIA requests regarding noncitizens' access to counsel, *available at* https://www.americanimmigrationcouncil.org/research/behind-closed-doors-overview-dhs-restrictions-access-counsel (last visited, April 3, 2018).

Requesters will analyze and post the information obtained through this FOIA request on its publicly accessible website.  If the responsive information is voluminous, Requesters also will publish a summary analysis of such information and will disseminate that summary through their established networks.  Finally, Requesters have regular contact with national print and news media and plans to share information gleaned from FOIA disclosures with interested media.

b) *Disclosure of the Information Is Not Primarily in the Commercial Interest of Requesters*

Requesters are not-for-profit organizations.  We seek the requested information for the purpose of disseminating it to members of the public who have access to our public website and other free publications, and not for the purpose of commercial gain.

* * *

Please provide the applicable records to:

Katie Shepherd

---

[4]    *See, e.g,* Caitlin Dickerson & Ron Nixon, *White House Weighs Separating Families to Deter Migrants*, N.Y. Times, Dec. 22, 2017 (https://www.nytimes.com/2017/12/21/us/trump-immigrant-families-separate.html); Dora Galacatos, Alan Shapiro & Brett Stark, *The Cruel Ploy of Taking Immigrant Kids From Their Parents*, N.Y. Times, Feb. 28, 2018 (https://www.nytimes.com/2018/02/28/opinion/immigrant-children-deportation-parents.html); Michael E. Miller & Jon Gerberg, *"Where's Mommy?": A Family Fled Death Threats, Only to Face Separation at the Border*, Washington Post, Mar. 18, 2018 (https://www.washingtonpost.com/local/wheres-mommy-a-family-fled-death-threats-only-to-face-separation-at-the-border/2018/03/18/94e227ea-2675-11e8-874b-d517e912f125_story.html).

Family Separation Practices FOIA Request | **American Immigration Council** | April 2018

American Immigration Council
1331 G Street NW, Suite 200
Phone: 202-507-7511
Email: kshepherd@immcouncil.org.

Thank you for your prompt attention to this request.

Sincerely,

KATIE SHEPHERD
EMILY CREIGHTON
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW, Suite 200
Washington, DC 20005
Phone:  202-507-7511
Email: kshepherd@immcouncil.org

MICHELLE BRANE
WOMEN'S REFUGEE COMMISSION
1012 14th Street NW, Suite 1100
Washington, DC 20005

MARY MEG MCCARTHY
NATIONAL IMMIGRANT JUSTICE CENTER
c/o Jenner & Block, LLP
1099 New York Avenue NW
Washington, DC 20001

JENNIFER PODKUL
KIDS IN NEED OF DEFENSE
1300 L St. NW, Suite 1100
Washington, DC 20005

LAURA ST. JOHN
FLORENCE PROJECT
Florence Project Main Office
P.O. Box 654
Florence, Arizona 85132

*By and through counsel:*

s/ John Walsh
JOHN WALSH
NI QIAN
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 17th St., Suite 2600

7

Denver, CO 80202
Phone: 720-274-3135
Facsimile: 720-274-3133
john.walsh@wilmerhale.com
ni.qian@wilmerhale.com

# EXHIBIT B



**U.S. Department of Homeland Security**
Washington, DC 20528

*Privacy Office, Mail Stop 0655*

April 5, 2018

<u>**SENT VIA E-MAIL TO:**</u>  KShepherd@immcouncil.org

Katie Shepherd
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005

Re:  **2018-HQFO-00835**

Dear Ms. Shepherd:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated April 03, 2018, and to your request for a waiver of all assessable FOIA fees.  Our office received your request on April 04, 2018.  Specifically, you requested 1.records regarding the past or planned implementation and use of any electronic system, including Sigma and E3, to track instances in which at least one child is separated from at least one adult family member while in the custody of CBP. Records should include all data fields contained in the tracking system, such as: (a) Unique identifier; (b) Event area of responsibility; (c) Title of officer who apprehended or encountered individual; (d) Title of officer who referred non-citizen adult for criminal prosecution, if applicable; (e) Citizenship country; (f) Case status for adult/child; (g) Whether family relationship is verified, and by what means; 2. records related to any past, current, or planned policy, guidance, or recommendation regarding the separation of families who arrive at the border, particularly the U.S.-Mexico border, including ports of entry; 3. records related to past or planned training of DHS personnel regarding screening of adult family members for referral for criminal prosecution for immigration violations; 4.records related to past or planned training of DHS personnel regarding treatment of adult family members and minor children in ICE or CBP custody who have been separated from adult family members while in ICE or CBP custody; 5.records related to DHS's practices or protocols for coordinating the location of, and communication (telephonic, video, or in-person) between, an adult family member and a minor child, following separation of the adult family member from the child while in CBP or ICE custody; 6. records related to coordination among CBP, ICE, and DHS regarding the processing and handling of the separation of adult family members from minor children; 7. records related to coordination between DHS and HHS regarding the separation of adult family members from minor children, including the separate sheltering of those minor children; 8.records related to coordination between DHS and DOJ regarding the criminal prosecution of any such families or noncitizen parents; 9. records related to DHS's practices or protocols for verifying a family relationship prior and subsequent to separation of an adult family

member and a minor child, including the use of DNA testing; 10. records related to DHS's practices or protocols outlining the process that must be followed and the evidentiary standard that must be met prior to the separation of an adult
family member from a minor child on the basis of an allegation or suspicion that the family relationship is not bona fide; 11. All records containing the following data, broken down by month where possible: a. The number of minor children separated from an adult family member by DHS
personnel while in CBP or ICE custody; b. The number of minor children separated from a legal guardian or at least one
parent by DHS personnel while in CBP or ICE custody; c. Where at least one child is separated from at least one accompanying adult family
member while in CBP or ICE custody, the number of instances in which adult family members were referred by CBP or ICE for criminal prosecution; d. Of the total number of adult family members separated from a minor child while in CBP or ICE custody, the number of convictions entered for the adult family members for "smuggling" under 8 U.S.C. Sec. 1324, "illegal entry" under 8 U.S.C. Sec. 1325, "illegal reentry" under 8 U.S.C. Sec. 1326, or other federal charges (broken down by statute of conviction); e. Of the total number of adult family members who were convicted for an immigration violation,  including "smuggling," etc;

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Consistent with 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA regulations, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances under 6 C.F.R. Part 5 § 5.5(c). As your request seeks documents that will require a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c).  If you would like to narrow the scope of your request, please contact our office.  We will make every effort to comply with your request in a timely manner.

You have requested a fee waiver.  The DHS FOIA regulations at 6 C.F.R. Part 5 § 5.11(k) set forth six factors DHS must evaluate to determine whether the applicable legal standard for a fee waiver has been met:  (1) Whether the subject of the requested records concerns "the operations or activities of the government," (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons, (4) Whether the contribution to public understanding of government operations or activities will be "significant," (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure, and (6) Whether the magnitude of any identified commercial interest to the requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

Upon review of the subject matter of your request, and an evaluation of the six factors identified above, DHS has determined that it will conditionally grant your request for a fee waiver.  The fee waiver determination will be based upon a sampling of the responsive documents received from the various DHS program offices as a result of the searches conducted in response to your FOIA

request.  DHS will, pursuant to DHS FOIA regulations applicable to non-commercial requesters, provide two hours of search time and process the first 100 pages at no charge to you.  If upon review of these documents, DHS determines that the disclosure of the information contained in those documents does not meet the factors permitting DHS to waive the fees, then DHS will at that time either deny your request for a fee waiver entirely, or will allow for a percentage reduction in the amount of the fees corresponding to the amount of relevant material found that meets the factors allowing for a fee waiver.  In either case, DHS will promptly notify you of its final decision regarding your request for a fee waiver and provide you with the responsive records as required by applicable law.

In the event that your fee waiver is denied, and you determine that you still want the records, provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations as they apply to non-commercial requesters.  As a non-commercial requester you will be charged for any search time and duplication beyond the free two hours and 100 pages mentioned in the previous paragraph.  You will be charged 10 cents per page for duplication and search time at the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher.  In the event that your fee waiver is denied, we will construe the submission of your request as an agreement to pay up to $25.00.  This office will contact you before accruing any additional fees.

We have queried the appropriate component(s) of DHS for responsive records.  If any responsive records are located, they will be reviewed for determination of releasability.  Please be assured that one of the analysts in our office will respond to your request as expeditiously as possible.  We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2018-HQFO-00835**.  Please refer to this identifier in any future correspondence.  The status of your FOIA request is now available online and can be accessed at: https://www.dhs.gov/foia-status, by using this FOIA request number.  Status information is updated daily.  Alternatively, you can download the DHS eFOIA Mobile App, the free app is available for all Apple and Android devices. With the DHS eFOIA Mobile App, you can submit FOIA requests or check the status of requests, access all of the content on the FOIA website, and receive updates anyplace, anytime.

If you have any questions, or would like to discuss this matter, please feel free to contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

Maura Busch

Maura Busch
Government Information Specialist

# EXHIBIT C

**U.S. Department of Homeland Security**
Washington, D.C. 20528



*Privacy Office, Mail Stop 0655*

April 5, 2018

Katie Shepherd
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005

Re: **2018-HQFO-00835**

Dear Ms.Shepherd:

This letters acknowledges receipt of [**OR**… This is in further response to] your Freedom of
Information Act (FOIA) request to the Department of Homeland Security (DHS), Privacy Office,
dated April 03, 2018, and received in this office on April 04, 2018.  You requested documents
regarding 1.records regarding the past or planned implementation and use of any electronic
system, including Sigma and E3, to track instances in which at least one child is separated from
at least one adult family member while in the custody of CBP. Records should include all data
fields contained in the tracking system, such as: (a) Unique identifier; (b) Event area of
responsibility; (c) Title of officer who apprehended or encountered individual; (d) Title of officer
who referred non-citizen adult for criminal prosecution, if applicable; (e) Citizenship country; (f)
Case status for adult/child; (g) Whether family relationship is verified, and by what means; 2.
records related to any past, current, or planned policy, guidance, or recommendation regarding
the separation of families who arrive at the border, particularly the U.S.-Mexico border,
including ports of entry; 3. records related to past or planned training of DHS personnel
regarding screening of adult family members for referral for criminal prosecution for
immigration violations; 4.records related to past or planned training of DHS personnel regarding
treatment of adult family members and minor children in ICE or CBP custody who have been
separated from adult family members while in ICE or CBP custody; 5.records related to DHS's
practices or protocols for coordinating the location of, and
communication (telephonic, video, or in-person) between, an adult family member and a minor
child, following separation of the adult family member from the child while in CBP or ICE
custody; 6. records related to coordination among CBP, ICE, and DHS regarding the processing
and handling of the separation of adult family members from minor children; 7. records related
to coordination between DHS and HHS regarding the separation of
adult family members from minor children, including the separate sheltering of those minor
children; 8.records related to coordination between DHS and DOJ regarding the criminal
prosecution of any such families or noncitizen parents; 9. records related to DHS's practices or
protocols for verifying a family relationship prior and subsequent to separation of an adult family
member and a minor child, including the use of DNA testing; 10. records related to DHS's

practices or protocols outlining the process that must be followed and the evidentiary standard that must be met prior to the separation of an adult
family member from a minor child on the basis of an allegation or suspicion that the family relationship is not bona fide; 11. All records containing the following data, broken down by month where possible: a. The number of minor children separated from an adult family member by DHS
personnel while in CBP or ICE custody; b. The number of minor children separated from a legal guardian or at least one
parent by DHS personnel while in CBP or ICE custody; c. Where at least one child is separated from at least one accompanying adult family
member while in CBP or ICE custody, the number of instances in which adult family members were referred by CBP or ICE for criminal prosecution; d. Of the total number of adult family members separated from a minor child while in CBP or ICE custody, the number of convictions entered for the adult family members for "smuggling" under 8 U.S.C. Sec. 1324, "illegal entry" under 8 U.S.C. Sec. 1325, "illegal reentry" under 8 U.S.C. Sec. 1326, or other federal charges (broken down by statute of conviction); e. Of the total number of adult family members who were convicted for an immigration violation,  including "smuggling," etc;.

Due to the subject matter of your request, I am transferring this request to the FOIA Officer for United States Immigration & Customs Enforcement (ICE) &U. S. Customs & Border Protection (CBP), Jill Eggleston and Sabrina Burroughs, U.S. Department of Homeland Security, Washington, D.C. 20528, for processing under the FOIA and direct response to you.  You may find their offices contact information below:

U.S. Citizenship & Immigration Services (USCIS)
Freedom of Information Act Office
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009
FOIA Officer: Catrina Pavlik-Keenan
FOIA Requester Service Center Contact: Fernando Pineiro
Phone: 866-633-1182
Fax: 202-732-4265
E-mail: ice-foia@dhs.gov
ICE Website


U. S. Customs & Border Protection (CBP)
FOIA Officer
1300 Pennsylvania Avenue, NW, Room 3.3D
Washington, D.C. 20229
FOIA Officer/Public Liaison: Sabrina Burroughs
Phone: 202-325-0150
CBP Website

We are also going to be processing your request in our office, the DHS Privacy Office.

If you need to contact our office again about this matter, please refer to **2018-HQFO-00835**. You may contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

Maura Busch

Maura Busch
Government Information Specialist